228 N.J. Super. 135 (1988)
549 A.2d 62
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEON BAKER, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PERRY SIMMONS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 21, 1988.
Decided October 17, 1988.
*137 Before Judges BRODY and SKILLMAN.
Alfred A. Slocum, Public Defender, attorney for appellants (Edward I. Davis, Designated Counsel for Leon Baker, of counsel and on the brief; Catherine M. Langlois, Designated Counsel for Perry Simmons, of counsel and on the brief).
W. Cary Edwards, Attorney General, attorney for respondent in Docket No. A-4795-86T4 (Meredith A. Cote', Deputy Attorney General, of counsel and on the brief).
*138 James W. Holzapfel, Ocean County Prosecutor, attorney for respondent in Docket No. A-5661-86T4 (Samuel J. Marzarella, Assistant County Prosecutor, of counsel).
The opinion of the court was delivered by BRODY, J.A.D.
We now consolidate the separate appeals of co-defendants Baker and Simmons who were each found guilty by a jury of possession of heroin contrary to N.J.S.A. 24:21-20(a)(1), and sentenced to a four-year prison term. We reverse both convictions because the trial judge erroneously admitted critical hearsay evidence of defendants' guilt.
Soon after receiving a telephone tip from an informer, police in unmarked cars and wearing plain clothes stopped a car owned and operated by Lee Siegel in which defendants Baker and Simmons were passengers. Baker was sitting in the front seat. Simmons was in the back seat. All three were arrested.
Siegel thereafter consented to a full search of his car. One of the searching officers noticed that there were "scratch" marks on the heads of the upper four of six Phillips screws that held in place a plastic panel covering the rear of the back of the front passenger seat. When he also noticed that the two uppermost screws were not as neatly set into the panel as the others, he removed the four upper screws and pulled the top of the panel away from the back of the seat. Behind the panel he saw an open bag that contained 45 small packets of heroin. A police officer testified that a bag of that kind usually contains 50 packets when sold, each packet costing about $20.
Siegel died of a drug overdose several months before trial. He was the informer who had tipped off the police. A few days before he provided the tip leading to defendants' arrest, Siegel had been arrested while attempting to break into a store. In an effort to gain consideration in the disposition of that case, he offered to furnish the police with evidence that would incriminate defendants who he said were supplying him with heroin to satisfy his six-packets-a-day habit.
*139 Defendants did not testify. Their lawyers argued to the jury that the State had failed to prove that defendants had knowledge of the hidden heroin, much less that they possessed it. They contended that the evidence supported the conclusion that Siegel alone possessed the heroin to satisfy his heavy habit.
The assistant prosecutor overcame the handicap of not having Siegel's testimony by calling as a witness a police officer who testified that Siegel was the informer who had provided the telephone tip that led to defendants' arrest. When defendants objected that the testimony was in effect inadmissible hearsay, the trial judge did not appreciate the hearsay implications of identifying Siegel as the informer. He ruled that once the officer testified that he recognized Siegel's voice on the telephone, the officer was competent to testify that Siegel was the caller so long as he did not disclose any statements that Siegel made which incriminated defendants.
We agree with defendants that when the police witness identified the owner and operator of the car as the source of the tip, he in effect advised the jury that Siegel had told him that defendants knowingly possessed the heroin hidden in the car. The inference is irresistible that Siegel tipped off the police to advise them of defendants' criminal conduct and not just his own. Although Siegel's incriminating hearsay statement was placed before the jury by inference, its impact was essentially the same as it would have been had Siegel's words been quoted directly.
We base our analysis on State v. Bankston, 63 N.J. 263 (1973). The court there noted that the hearsay rule does not bar a police witness from testifying that he approached a suspect or went to the scene of a crime "upon information received" where the evidence is not offered to prove that the information received was true but only that "the officer was not acting in an arbitrary manner or to explain his subsequent conduct." Id. at 268. There is seldom any justification for *140 admitting such evidence where the defendant does not claim that the police acted arbitrarily in approaching him.
In the instant case there was no need for any reference to an informer or to explain that the police were looking for a person described by the clothing [the jury could have inferred the informer said] he was wearing. There was no allegation that the police were acting arbitrarily. [Id. at 272.]
Where the only reason for referring to a tip is to place before the trier of fact, directly or indirectly, the truth of an informer's incriminating statement, the evidence is inadmissible hearsay and also violates the defendant's Sixth Amendment right to confront the informer. Id. at 269; State v. Thomas, 168 N.J. Super. 10, 15 (App.Div. 1979).
Bankston also makes it clear that evidence from which the content of a tip may be inferred is as inadmissible as the tip itself.
Although in the present case the police officers never specifically repeated what the informer had told them, the inescapable inference from [Detective] Genzone's testimony was that the informer had given information that defendant would have narcotics in his possession. Thus the jury was led to believe that an unidentified informer, who was not present in court and not subjected to cross-examination, had told the officers that defendant was committing a crime. The testimony was clearly hearsay. [State v. Bankston, 63 N.J. at 271.]
See also State v. Bowens, 219 N.J. Super. 290, 299-300 (App. Div. 1987).
The import of the officer's testimony here was not simply to identify Siegel as the informer. The fact that Siegel was the informer formed the basis for a reasonable but inadmissible inference that he gave the police a statement that incriminated defendants.
The final question to be answered where evidence was erroneously admitted in a criminal trial usually is whether to reverse the conviction and remand for a new trial. The answer to that question turns on whether the error was harmless considering the other evidence of guilt. "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173 (1963), quoted with approval in Bankston, 63 *141 N.J. at 273. Cf. State v. Douglas, 204 N.J. Super. 265, 274 (App.Div. 1985), certif. den. 102 N.J. 378 (1985) (where we affirmed the conviction because "[t]here was substantial credible evidence upon which the jury could predicate its finding of guilt without any hearsay testimony").
Here, aside from the inadmissible hearsay, the State merely presented evidence that (1) defendants were passengers in a car owned and operated by a person who consumed 6 packets of heroin a day to satisfy his addiction; (2) a bag containing 45 packets of heroin had been secreted inside the back of the front passenger seat of the car, and (3) the 50 packets that the bag had originally contained would have supplied the personal needs of the owner and operator of the car for 8 days. These facts are not "substantial" evidence that defendants knew that the heroin was hidden in the car and that they had the intention and capability of exercising control over it, the essential elements of the possession crime. State v. Brown, 80 N.J. 587, 597 (1979).
Indeed, without the hearsay there was insufficient evidence to support a conviction. State v. Reyes, 50 N.J. 454, 458-459 (1967). Criminal possession of CDS may not be inferred from mere presence in a car where the CDS has been hidden. State v. Shipp, 216 N.J. Super. 662, 665 (App.Div. 1987).
In answer to defendant Simmons's brief, the county prosecutor contends that there is the following incriminating evidence besides the presence of Simmons in the car:
Here the jury had evidence before them that when the automobile was stopped, defendant Perry Simmons was sitting in the back seat directly behind, and with access to, the right front passenger bucket seat where the forty-five (45) individually wrapped packets of heroin valued at $20.00 per packet were found by the officers. The screws on the panel of the passenger bucket seat were loose, and scratched, and a knife was found on the floor beneath where defendant Perry Simmons had been sitting.
The prosecutor does not suggest how the foregoing evidence points to Simmons's guilt. At trial the State unsuccessfully offered to prove that Simmons was not seated behind Baker but *142 was lying down on the back seat because he was under the influence of drugs. The prosecutor told the jury in his summation that he was not suggesting that Simmons had used the blade of a folded penknife found on the floor behind the front passenger seat to loosen the Phillips screws. The officer who testified about the "scratches" on the screw heads and the condition of the knife blade acknowledged that it would be mere "conjecture" to infer that Simmons had used the knife to loosen and tighten the screws. There is no evidence that the screws were "loose" when the car was stopped.
In answer to defendant Baker's brief the Attorney General contends that there is the following incriminating evidence besides the presence of Baker in the car:
... It is evident that at some point the screws fastening the back seat panel had to have been removed in order for the heroin to have been placed in the seat. The fact of their removal was further evidenced by their protrusion from their proper setting as well as the scratch marks themselves. Furthermore, Detective Addison testified that when the heroin packets were opened for field testing, the heroin was still fresh, indicating it had been recently placed in the vehicle. The knife itself had scratches and bits chipped off near its tip, clearly indicating it had been used either improperly or on a very hard surface. Finally, the knife was located directly below the panel where the screws had been removed.
There is some evidence that the knife blade had barely perceptible marks suggesting that it could have been used to loosen and tighten the Phillips screws, but there is no evidence of significant "bits chipped off near its tip." Moreover, as previously noted, the assistant prosecutor expressly told the jury that he was not suggesting that Simmons had used the knife to loosen the screws. There was no evidence of how long heroin retains its freshness. Besides, one cannot infer that defendants knew of the hidden heroin from the fact that it was "fresh."
We distinguish State v. Palacio, 111 N.J. 543 (1988), where the majority of the court held in a similar case that the evidence of criminal possession was sufficient to convict. Evidence of possession present there, but not present here, included the fact that the CDS was a large amount of pure cocaine worth almost a million dollars. The majority of the court inferred from that *143 evidence that the owner and operator of the car was a "smuggler" and further inferred from that inference that he would not have taken on a passenger unless he was privy to the presence of such a valuable hidden cargo. Here the hidden heroin was little more than the owner and operator's weekly supply, worth $900. One cannot infer therefrom that he was a smuggler, or that the cargo was so valuable that he would not have taken on passengers unless they not only knew it was there but also possessed it.
The Palacio majority noted additional evidence of the passenger's guilt: after the arrest he spoke Spanish to the driver (inferentially to keep the substance of his remarks from the police) while the police were searching the car, he refused to answer police officers' questions, he watched the search with intense interest, he was nervous in the presence of the police, he was a close friend of the driver's and had been driving with him a long distance. There is no evidence of such facts here.
Ordinarily where an appellate court rules in a criminal case that the admission of incriminating evidence was reversible error, the court remands the matter for retrial even if, as here, the remaining evidence produced at trial was insufficient to convict. State v. Menke, 25 N.J. 66, 72 (1957). This practice recognizes that the State may have additional evidence that it did not produce in reliance upon the strength of the erroneously admitted evidence. We recently held that a retrial in such circumstances does not place the defendant in double jeopardy. State v. Williams, 226 N.J. Super. 94, 104-109 (App.Div. 1988).
However, where it appears from the record that the State produced all available significant evidence at trial and the State does not suggest that it has more, an appellate court should remand for the entry of a judgment of acquittal. State v. Croland, 31 N.J. 380, 384 (1960). That is the case here. The State's evidence against these defendants was buried with Siegel. In his summation the assistant prosecutor repeatedly emphasized that defendants' guilt was inferable from the fact *144 that Siegel was the informer. Deprived of that inference, the State has no case.
Defendants' convictions are reversed and the matter remanded for the purpose of entering judgments of acquittal.