265 N.J. Super. 518 (1992)
628 A.2d 340
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ARTURO WHYTE, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FITZ GEORGE BYFIELD, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BARRINGTON AIRD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 25, 1992.
Decided March 24, 1992.
*519 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Michael Chazen argued the cause for appellant Arturo Whyte (Wilfredo Caraballo, Public Defender, attorney; Mr. Chazen, Designated Counsel, of counsel and on the brief and reply brief).
Wilfredo Caraballo, Public Defender, attorney for appellant Fitz Byfield (Terry Shaw, Assistant Deputy Public Defender, of counsel and on the brief).
Wilfredo Caraballo, Public Defender, attorney for appellant Barrington Aird (James W. Donnelly, Designated Counsel, on the brief).
Joshua P. Cohn, Assistant Prosecutor, argued the cause for respondent (John J. Fahy, Bergen County Prosecutor, attorney; Mr. Cohn on the three letter briefs).
PER CURIAM.
Defendants Arturo Whyte, Fitz Byfield and Barrington Aird were jointly tried and all were convicted of charges of possession of cocaine, N.J.S.A. 2C:35-10a(1); possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5a(1) and -5b(2); and unlawful possession of a handgun, N.J.S.A. 2C:39-5b. The conviction of each for possession of cocaine was merged into his conviction for possession with intent to distribute, and on that conviction, Aird was sentenced to a a term of seven years subject to two and one-third years of parole ineligibility, Whyte to a term of eight years subject to two and two-thirds years of parole ineligibility, and Byfield to a term of ten years subject to three and one-third years *520 of parole ineligibility. Each was also sentenced to a concurrent three year term on the weapons conviction, and statutory D.E.D.R. penalties were imposed on each. Each filed a separate notice of appeal. We consolidate the appeals for purposes of this opinion.
All the convictions here were based on a constructive possession theory. These three defendants had been passengers in a vehicle being driven by codefendant Aburshar Abtar[1] when it was stopped for a moving traffic violation on Route 80 in Hackensack. The handgun and cocaine, which had been concealed in the van, were discovered by the officer during a roadside search. The primary issue on these appeals is whether the State's proofs were adequate to permit the jury to infer, beyond a reasonable doubt, that these three defendants were aware of the presence of the contraband in the vehicle in which they were passengers and that they had "an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists." State v. Brown, 80 N.J. 587, 597, 404 A.2d 1111 (1979). Our careful review of this record satisfies us that the State's proofs were insufficient to warrant a constructive possession finding beyond a reasonable doubt. Hence we conclude that the trial judge erred in denying defendants' motions for acquittal made under both R. 3:18-1 and 3:18-2.
The State's key witness was State Trooper Kevin Tormey who had made the initial stop of the vehicle, a custom van, and had then searched it. None of the back-up officers who were summoned to the scene testified. Tormey explained that he had stopped the vehicle because he had observed it cutting off another vehicle in a dangerous manner. He pulled his own vehicle behind the van and as he exited, he saw the driver of the van, later ascertained to be Abtar, approaching him. He instructed the driver to return to the front of the van, where their further *521 conversation took place. Upon being asked for his credentials and looking through his wallet, Abtar told the officer that he did not have a license and that the registration was in the car. The officer, observing Abtar's extreme nervousness and his evident desire to get back into the van, patted him down for weapons. During the pat-down, Abtar placed his hand in one of his pockets, apparently balling it into a fist. The officer instructed him to release whatever it was in the pocket which he had grabbed. A brief struggle ensued. At that point, the front passenger door of the van opened. Abtar then pulled away from the officer, ran around the front of the van to the open door, and dove to the floor, placing his hand underneath the seat. The officer, fearing that Abtar was either reaching for or concealing a weapon, drew his own weapon, ordered all four out of the van, and radioed for back-up.
Each of the four occupants was patted down. None had any weapon on his person, and a later search of their persons after their arrest also disclosed no contraband. Officer Tormey, looking into the van to see if Abtar had placed anything in the floor when he dove into it, found four marijuana cigarettes in that location. At that point, he obtained both Abtar and Byfield's written consent to search the van.
The van had been specially outfitted. There were two captain's chairs in front and two more captain's chairs immediately behind them. Several feet behind the second row of captain's chairs was a bench seat with a raised back. Behind the bench seat were the rear doors of the van, which opened outward. Defendant Byfield had been sitting in the front passenger chair. Defendants Whyte and Aird had been sitting in the second row of captain's chairs, Whyte behind Byfield and Aird behind Abtar.
A search of the van revealed a plastic bag containing seven and three-quarter ounces of cocaine which had been concealed within the upholstery at the back of the rear left captain's chair. As we understand Trooper Tormey's description, there was an ashtray built into the rear of the seat for the convenience, apparently, of *522 persons who might be seated in the bench seat. The cocaine was stuffed into the seat behind the ashtray. A further search revealed two rolled-up brown paper bags between the rear of the bench seat and the rear doors. One bag contained a semi-automatic pistol and ammunition for it. The other contained drug paraphernalia, including plastic bags and razor blades. Although the two brown bags were concealed from view, Tormey explained that they could be reached from underneath by a person standing in front of the bench.
Trooper Tormey also testified that none of the three passengers behaved in any untoward manner at any time. None made any furtive or suspicious movements or behaved in any other exceptionable way. Each cooperated with the officer, truthfully answering questions respecting their identities and addresses and in fact correctly identifying Abtar, who had given a false name. The officer did not, after the fact, construe Byfield's opening of the passenger door as suspicious, describing it as Byfield's looking out to see what was happening. The only other significant testimony given by Tormey was that the van had not been stolen but belonged to a woman who lived in Ohio, that Abtar lived in the Bronx, and that the three passengers lived in the same apartment building in Brooklyn. There was no proof respecting the van's destination, the destination of any of its occupants, or the reason for its having been in transit on Route 80 when it was stopped. Nor was there any proof of there having been any luggage of any kind in the van, a fact which might have supported an inference that the occupants were embarked on a lengthy journey.
The State also produced a senior investigator of the Bergen County Prosecutor's Office as an expert on drug trafficking. It was the expert's opinion, based on quantity and the accompanying paraphernalia, that the cocaine found in the van was intended to be distributed. It was also his opinion that the so-called street value of cocaine doubles as soon as it leaves New York City. He estimated the uncut value of the cocaine found in the van as between $800 and $1,000 an ounce in the City and twice that *523 outside the City. He further opined that if the cocaine were cut into one-tenth gram packages, each package would sell in New York City for about $10 and, we assume, outside New York City for $20.[2]
Do these facts support an inference beyond a reasonable doubt that the three passengers were in constructive possession of the cocaine and the handgun? We conclude that they do not.
It is clear that constructive possession cannot be based on mere presence at the place where contraband is located. There must be other circumstances or statements of defendant permitting the inference of defendant's control of the contraband. See State v. Brown, 80 N.J. 587, 593, 404 A.2d 1111 (1979); State v. Sapp, 71 N.J. 476, 366 A.2d 334 (1976), rev'g on dissent, 144 N.J. Super. 455, 460, 366 A.2d 335 (App.Div. 1975). We consider the weight of the circumstances beyond mere presence as here adduced in the light of State v. Palacio, 111 N.J. 543, 545 A.2d 764 (1988), and State v. Shipp, 216 N.J. Super. 662, 524 A.2d 864 (App.Div. 1987), which we read Palacio as approving.
In Shipp, a vehicle was stopped for speeding on Route 80 on its way from New York to Cleveland, Ohio. A substantial quantity of heroin was being carried by a rear-seat passenger in a vinyl bag belonging to her and in which she had other personal belongings. The front seat passenger was her son-in-law. We reversed the son-in-law's conviction, which had been based on constructive possession, concluding, despite the family relationship, that "defendant's presence in the automobile under [these] circumstances ... does not suffice to authorize an inference that he was sharing in the intentional control and dominion over the contraband material." Id. at 666, 524 A.2d 864. We also held that "[m]ere knowledge, without more, on the part of one automobile passenger *524 that a co-passenger is carrying illicit drugs does not constitute the former a co-possessor." Ibid.
The facts in Palacio were somewhat different. There an automobile was stopped for speeding on Route 40 in Pennsville. Both driver and passenger were Florida residents. Because the driver had what seemed to the officer to be drug paraphernalia on his person, both he and his passenger were asked to step out of the car. During the trooper's ensuing questioning, the passenger appeared to him to be "sweating, moving in circles," and "overly nervous." 111 N.J. at 545, 545 A.2d 764. As the vehicle was being searched after back-up officers arrived, the officer believed both the driver and passenger to be acting suspiciously as they watched the proceedings. Although both apparently spoke English, they conversed together in Spanish for the presumed reason of concealing the content of their conversation from the police. The search revealed a secret compartment in the trunk containing fifteen pounds of cocaine having a street value of close to one million dollars.
In concluding that these facts supported an inference beyond a reasonable doubt that the passenger was in constructive possession of the contraband, the Supreme Court focused on circumstances which are not present here. It concluded that because of the monetary value of the drugs, which it characterized as "infinitely greater" than that involved in Shipp, id. at 552, 545 A.2d 764, it was unlikely that the driver would have anyone other than a confederate in the car with him, particularly on so long a trip as from Florida to New Jersey. The court also placed significant emphasis on the passenger's untoward behavior, namely, his extreme nervousness, his suspicious conduct during the search, and his conversing in a language the police would not understand. Ibid.
Although the case before us is close, we are persuaded that the totality of the circumstances, even if we fully credit the State's case, cannot convert the presence of these defendants in the place where the concealed contraband was found into a knowing control *525 and dominion over it. The only circumstance placing this case in the Palacio rather than the Shipp column is the fact that the contraband was concealed within the vehicle itself rather than on the person or within the personal belongings of any one passenger. None of the other Palacio circumstances are here present. The contraband here did not have a value of anything like the magnitude which apparently influenced the Court in Palacio. None of the passengers acted in any way furtively or suspiciously. If we assume that the trip originated either in the Bronx or in Brooklyn, it was relatively brief in both distance and duration. We certainly could not, nor could a jury, speculate on its destination. There is no other fact here indicating the passengers' knowledge that the van contained contraband, no less that they were co-possessors of it. In sum, while there may be a fine line between Palacio and Shipp, we are persuaded that this case is on the Shipp side of it. There is a world of difference between speculation and legitimate inference, and we conclude that the convictions here rested on speculation.
Defendants raise other challenges to their convictions which we need not consider in view of our determination that they are entitled to judgments of acquittal. All argue that the warrantless search of the van was constitutionally improper. Whyte and Byfield claim error in the court's refusal to admit into evidence Abtar's statements at his arraignment by which he inculpated himself without exculpating any of the passengers. Aird objects to the scope of the testimony of the drug-trafficking expert. And Byfield objects to the validity of the penalty scheme legislatively prescribed for drug convictions. We are, however, satisfied that all of these issues are without merit. R. 2:11-3(e)(2).
The judgments of conviction are reversed and we remand to the trial court for entry of judgments of acquittal in favor of defendants on all counts.
SHEBELL, J.A.D., dissenting.
I dissent from the majority's holding that the trial judge erred in failing to grant judgments of acquittal to these defendants. *526 The State provided sufficient evidence to warrant jury convictions on each of the charges. See State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967). The trial judge and this court are required to give the State the benefit of all favorable inferences which can reasonably be drawn from all of the testimony favorable to the State when determining whether a reasonable jury could find guilt beyond a reasonable doubt. Id.
There is no dispute in this case with regard to the facts. No defense testimony controverted any of the State's evidence. It was clearly reasonable to infer from the facts presented that all four occupants of the van, registered in Akron, Ohio, were enroute from New York City, where they all lived, to a common destination.[1] These three defendants were living in the same building. There was nothing to detract from the inference that all four defendants were engaged in the common enterprise of transporting a large and valuable quantity of cocaine for distribution.
The location of the hidden drugs and the two bags containing the gun, ammunition, and drug paraphernalia only added to this inference. The location of these items was in much closer proximity to the rear passengers than it was to the driver. It is highly unlikely that if only the driver were implicated in the transportation of so valuable a quantity of drugs that he would permit the semi-automatic pistol and ammunition to be located in the rear of the vehicle only two feet from the passengers and inaccessible to himself.
The State's expert testified that drugs have a far greater value as one travels away from New York City and that it is common for a group of persons to pool their money to purchase a sizeable quantity for distribution in order to maximize profit and provide *527 greater protection. The vehicle was traveling west on Route 80, in the direction of Ohio, where it was registered. Although the vehicle was not registered to any of its occupants, the conduct of the driver, both at the scene and at his arraignment, raised the clear inference that he knew that the contraband was in the vehicle. The fact that he had knowledge would not serve to negate the inference that the other passengers also had knowledge and that all had constructive possession of the contraband. When the altercation between the trooper and the driver began, the right-front passenger in the van opened the door in what a reasonable jury could infer was an attempt to aid the driver. See State v. Smith, 32 N.J. 501, 522, 161 A.2d 520 (1960), cert. denied, 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961). Indeed, after the passenger had opened the door, the driver dove into the vehicle where the other passengers remained.
Our holding in State v. Shipp, 216 N.J. Super. 662, 524 A.2d 864 (App.Div. 1987), is clearly distinguishable. No facts were presented in Shipp from which to draw an inference that the defendant had any interest in the contraband. Shipp was merely a front-seat passenger in a car while his stepmother was a backseat passenger when the car was stopped for speeding. The stepmother had the heroin on her person until she dropped several of the envelopes which contained heroin into a storm drain. As noted by the present majority, in Shipp we stated that the facts were unlike the situations in Palacio and Paez where "the contraband was found not in the personal possession of a codefendant, but in a hidden compartment behind the rear seat in Palacio and behind a door panel in Paez." Shipp, 216 N.J. Super. at 667, 524 A.2d 864.
Unquestionably the present case, even if it were a close one as stated by the majority, falls more closely towards State v. Palacio, 205 N.J. Super. 256, 500 A.2d 749 (App.Div. 1985), aff'd, 111 N.J. 543, 545 A.2d 764 (1988), and Paez v. O'Lone, 772 F.2d 1158 (3d Cir.1985). The majority can find no support for its position from our holding in State v. Baker, 228 N.J. Super. 135, 549 A.2d 62 (App.Div. 1988). In Baker, the quantity of drugs secreted was no *528 more than a week's supply for the addicted occupants of the vehicle. In Baker, we distinguished the Supreme Court's holding in Palacio by noting that the controlled dangerous substance in Palacio was a large amount of pure cocaine. Id., at 142-43, 549 A.2d 62. Here, as in Palacio, it is reasonable to infer from the evidence that the operator and passengers in the vehicle were armed and transporting and distributing for profit a large quantity of cocaine. It can be "further inferred from that inference that" the driver would not have taken on passengers unless they were "privy to the presence of such a valuable hidden cargo." Id. at 142, 549 A.2d 62. Accord State v. Foreshaw, 245 N.J. Super. 166, 186-87, 584 A.2d 832 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991).
I am not willing to concede that this is even a close case. Rather, there was an abundance of evidence from which a reasonable jury could infer the guilt of each of the defendant passengers beyond a reasonable doubt. Reyes, 50 N.J. at 458-59, 236 A.2d 385.
Accordingly, I would affirm the judgment of conviction as I find none of the remaining issues raised by defendants to have merit. R. 2:11-3(e)(2).
NOTES
[1] Abtar absconded after his arraignment and has apparently not yet been reapprehended.
[2] Based on approximately 28 grams per ounce, the total weight of the cocaine was about 217 grams, yielding 2,170 one-tenth gram packages having a total street value of about $43,000 outside New York City.
[1] The majority suggests that because there was no proof of any luggage in the van no inference is possible "that the occupants were embarked on a lengthy journey." Even if the inference of a lengthy trip were necessary, which it is not, the trip from New York to Akron would take only approximately eight hours. It strains the imagination to picture a band of drug smugglers carrying luggage on such a day-trip.