709 A.2d 298

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JAMES W. HURDLE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 1, 1998—Decided May 7, 1998.

Before Judges MUIR, Jr., KESTIN and CUFF.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Patricia Nichols*, Designated Counsel, of counsel and on the brief).

*William H. Schmidt*, Bergen County Prosecutor, attorney for respondent (*Michele–Lee Berko*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

A jury found defendant guilty of possession of cocaine in a quantity of one-half ounce or more, but less than five ounces, with intent to distribute (*N.J.S.A.* 2C:35–5a(1), –5b(2), count one); and possession of the same amount of cocaine (*N.J.S.A.* 2C:35–10a(1), count two). The trial court, after merging count two into count one, sentenced defendant to seven years of imprisonment. The court also imposed appropriate monetary penalties, as well as a six-month driver's license suspension.

Defendant appeals, contending:

POINT I

THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL.

POINT II

DEFENDANT'S CONVICTIONS ON COUNTS ONE & TWO ARE AGAINST THE WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED IN DENYING HIS MOTIONS FOR A JUDGMENT OF ACQUITTAL AND A NEW TRIAL.

POINT III

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO SUPPRESS THE CDS FOUND IN THE CODEFENDANT'S PANTS.

POINT IV

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE AGGRAVATING FACTORS OUTWEIGHED THE MITIGATING FACTORS

WHEN IMPOSING SENTENCE ON THIS DEFENDANT.  (Not Raised at Trial Level)

POINT V

THE TRIAL COURT ERRED IN DENYING DEFENDANTS' MOTION TO EXCLUDE THE LABORATORY CERTIFICATE AND COMPEL THE PRODUCTION OF THE LABORATORY EMPLOYEE RESPONSIBLE FOR TESTING OF THE SUBJECT CDS.

POINT VI

THE TRIAL COURT ERRED IN FAILING TO CHARGE THE JURY TO DETERMINE THE WEIGHT OF THE ALLEGED CDS, REQUIRING REVERSAL OF THE DEFENDANT'S CONVICTION (Not raised at Trial Level).

POINT VII

THE TRIAL COURT ERRED IN CHARGING THE JURY AS TO THE DEFINITION OF DISTRIBUTION TO EXCLUDE DISTRIBUTION BETWEEN THE CODEFENDANTS, ALREADY CHARGED WITH POSSESSION OF THE SUBJECT CDS.

We reject the contentions and affirm.

## I

The State presented evidence that on February 3, 1995, around 3:21 p.m., a New Jersey State Trooper observed a car driven by defendant, with codefendant Matthew Patrick a passenger, driving southbound on the New Jersey Turnpike.  Defendant's vehicle had no inspection sticker.  The trooper signaled defendant to stop his car.

The trooper asked defendant for his driver's license, registration, and insurance card.  Defendant could only produce a rental agreement naming Lagina Wright as the authorized lessor/ driver of the vehicle.  The agreement identified Lagina Wright's address as South Line or Lime Street, Lancaster, Pennsylvania.

Based on lack of credentials, the trooper· asked defendant to step out of the car.  Upon defendant's doing so, the trooper advised defendant of the inspection sticker violation.  After a brief conversation concerning defendant's ignorance of the need for an inspection sticker, the trooper told defendant to provide his name and date of birth for a motor vehicle driver's license check.  Defendant gave what later proved to be a false name and false date of birth.

As the trooper spoke with defendant, he observed Patrick make "a movement toward the center of his waist area." Patrick "looked down once or twice towards either the floor area or his waist area and then he looked back towards the rear area of the car where [the trooper] was standing." As the trooper later sat in his patrol car calling for backup assistance, Patrick continued "to look down towards his waist area, look back towards the troop car and appeared as though he was still moving around with his left hand towards ... his waist area."

Concerned for his safety and after a backup trooper arrived, the trooper asked Patrick to step out of the car. When Patrick did so, the trooper noticed "a large unnatural bulge ... around the waist area of his pants." Subsequently, after Patrick afforded some resistance to the trooper's effort to remove the bulging object, the trooper was able to remove it. The object was a large paper bag containing a clear plastic bag with white powder. The trooper's experience led him to believe the powder was cocaine, an assessment later confirmed by testing. The quantity of cocaine was 89 grams, or 3.17 ounces. The record discloses the police determined both defendant and Patrick had addresses in Reading, Pennsylvania. During a subsequent search of the car, police found a jacket, that defendant admitted he owned, to contain a glass pipe with cocaine residue and rolling papers used for smoking illicit drugs.

At trial, the State presented the testimony of Eric Baum, a six-year veteran of the Bergen County Narcotics Task Force. Inspector Baum testified he had worked on fifty drug trafficking investigations in an undercover capacity. After he explained to the jury the scope and nature of those investigations and his opportunities to observe drug transactions and discuss drug operations with drug dealers and confidential informants, defendant stipulated to his expert qualifications to explain techniques commonly used by drug dealers. The State nevertheless went on to establish the investigator's extensive drug investigation and undercover operation education on national, state, and local levels. The investigator also described his work with the United States

Customs Service on investigations covering drug money launder-
ing and drug interdiction.

The prosecutor questioned Investigator Baum about the tech-
niques of drug users and drug dealers in the context of hypotheti-
cal facts that mirrored the facts and circumstances established in
the State's case. Investigator Baum testified to the conduct of
drug users and drug dealers. He stated in this case the cocaine
involved exceeded considerably the amount normally purchased
for personal use. He further testified that personal-use purchas-
ers do not travel long distances, as here from Lancaster, Pennsyl-
vania, to New York City, to acquire drugs. He added, given the
risks involved in driving long distances, personal-use purchases
are made on local street corners. He also averred personal-use
purchases are in small containers, generally one gram of cocaine
hydrochloride (the drug involved here). In contrast, the investiga-
tor stated: drug dealers will travel great distances, particularly to
New York City, where there is an abundance of illicit drugs
available for volume sales; drug dealers will travel in pairs to
facilitate drug sales in the areas of New York City in order to
protect the car while a drug purchase is being made; drug dealers
rent vehicles for drug transportation to avoid forfeiture of their
own vehicles if caught by law enforcement officials in the course of
transportation; drug dealers, particularly drivers of the transport-
ing vehicles, carry no identification and give false names to
frustrate law enforcement personnel when police stops are made;
and the price of cocaine in the volume involved, 3.17 ounces, when
acquired for purposes of later sale, is enhanced considerably from
the purchase price in New York City, an enhancement justifying
the risks taken. Here, he testified the 89 grams would extrapo-
late to 890 individual doses for personal-use sale, which would
create a potential profit of about $12,000 above New York City
street prices.

Based on his training, education, and work in the illicit drug
field and the hypothetical presented which, as noted, mirrored the
facts of the case, the investigator stated it was his opinion the 89

grams of cocaine were possessed with the intent to resell or distribute. He further stated that the 89 grams were not consistent with personal consumption by two persons. These opinions were predicated on the profiles of personal drug purchasers and drug dealers identified in his direct examination.

Defendant did not testify. Patrick, an unemployed construction worker, testified that at the time of his arrest he resided with his wife in Alexandria, Virginia. He averred that he was a drug addict with a substantial habit and that he had taken $1,500 of his wife's savings so he could go to Washington, D.C., to buy drugs. Ultimately, he alleged he called defendant to arrange for them to meet in Lancaster, Pennsylvania, so they could "party." That night, Patrick asserted he and defendant bought and used drugs. The next day, Patrick claimed he and defendant decided to go to New York City and meet a girl he knew, named Tina, who worked at a go-go bar on 42nd Street.

Needing transportation, defendant arranged with his friend Lagina for her to rent a car. After Lagina rented the car around 10 a.m., the two drove to New York City and arrived at the go-go bar around 12 noon, but Tina was not there. Nonetheless, the two stayed at the bar. Subsequently, Patrick claimed he arranged, without defendant's knowledge, to make a cocaine buy at a nearby pizzeria. He claimed the purchase he made, around $800 to $1,000 worth, was for his personal use. Thereafter, he claimed he returned to the go-go bar, spoke with defendant about returning to Lancaster, and the two agreed to do so in light of a threatened snowstorm. Although Patrick claimed the pair would have stayed in New York City if they had located Tina, the rental agreement called for them to return the car at 9 a.m. the day after it was rented.

While Patrick claimed he was a cocaine user with a substantial habit, on cross-examination the record discloses an unusual lack of knowledge of drugs sold on the street and a very questionable ability to produce the funding necessary to undergird his alleged extensive drug abuse habit.

Based on the foregoing, the trial court charged the jury on, among other things, the elements of constructive possession. The jury found defendant guilty as noted, and this appeal ensued.

## II

Defendant contends his convictions, both predicated on the theory of constructive possession, must be reversed because there is no credible evidence from which it can be shown he constructively possessed the seized cocaine. He buttresses his contention with the assertion the State's expert was improperly allowed to provide the only evidence to support a constructive possession conclusion. We reject the contentions.

Like all issues pertaining to a defendant's claim of insufficient evidence to support a jury guilt verdict, the standard of appellate review for determining the sufficiency of evidence of constructive possession of illegal drugs is

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [*State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967).]

A determination of constructive possession is fact sensitive and requires careful scrutiny by a court, as evidenced by the plethora of decisional law on the subject. *See State v. Palacio,* 111 *N.J.* 543, 545 *A.*2d 764 (1988); *State v. Brown,* 80 *N.J.* 587, 404 *A.*2d 1111 (1979); *State v. Sapp,* 71 *N.J.* 476, 366 *A.*2d 334 (1976); *State v. Miller,* 273 *N.J.Super.* 192, 641 *A.*2d 567 (App.Div.1994); *State v. Whyte,* 265 *N.J.Super.* 518, 628 *A.*2d 340 (App.Div.1992), *aff'd o.b.,* 133 *N.J.* 481, 628 *A.*2d 287 (1993); *State v. Binns,* 222 *N.J.Super.* 583, 537 *A.*2d 764 (App.Div.), *certif. denied,* 111 *N.J.* 624, 546 *A.*2d 540 (1988); *State v. Shipp,* 216 *N.J.Super.* 662, 524 *A.*2d 864 (App.Div.1987). That sensitivity and careful scrutiny dictate courts must look to the totality of the circumstances, including defendant's presence at the location of the discovered drugs, as well as other factors before permitting an inference of constructive possession to be drawn. *Whyte, supra,* 265 *N.J.Su-*

*per.* at 523, 628 *A.*2d 340. Mere presence alone cannot serve as grounds for inferring constructive possession. *Brown, supra,* 80 *N.J.* at 593, 404 *A.*2d 1111; *Miller, supra,* 273 *N.J.Super.* at 195, 641 *A.*2d 567.

Before resolving defendant's contention there was insufficient evidence to support the jury's determination of guilt on constructive possession grounds, we address defendant's contention Investigator Baum's testimony improperly transgressed the propriety of the State's use of expert witnesses in drug distribution cases as prescribed in *State v. Odom,* 116 *N.J.* 65, 560 *A.*2d 1198 (1989), and as revisited in *State v. Berry,* 140 *N.J.* 280, 658 *A.*2d 702 (1995).

■ As a general rule, the determination of facts that serve to establish criminal guilt or innocence is the exclusive responsibility of the jury and "an expert's testimony that expresses a direct opinion that defendant is guilty of the crime charged is wholly improper." *Odom, supra,* 116 *N.J.* at 77, 560 *A.*2d 1198.

The general rule, however, does not prevent an expert from assisting the jury by

offering his opinion based on special knowledge and experience about the characteristics that serve to identify drugs that are being held for sale or distribution. Further, an expert opinion that the drugs were held for distribution, even though expressed in words that are similar to the statutory definition of the offense, does not rise to the level of an assertion that the defendant committed the crime charged or is guilty of the statutory offense.

[*Id.* at 80–81, 560 *A.*2d 1198.]

■ The principal justification for allowing such testimony is that it will assist the jury in resolving material factual issues. Expert testimony on narcotics operation is justified because jurors are " 'commonly unfamiliar with the methods by which drug dealers attempt to conceal their activities.' " *Berry, supra,* 140 *N.J.* at 293, 658 *A.*2d 702 (quoting *United States v. Dunn,* 846 *F.*2d 761, 763 (D.C.Cir.1988)).

■ In light of *Odom* and *Berry,* Investigator Baum's opinion was properly admitted. At no time on direct examination did the

investigator express an opinion that the defendant was guilty of the crimes charged. Instead, the investigator's opinion simply was a characterization of defendant's conduct based on the hypothetical facts presented, that the individuals in the car were in possession with the intent to distribute. Significantly, the investigator explained his opinion was based entirely on his training, education, and experience with narcotics investigation and not on his independent investigation of the case. The rationale for his opinion, as previously noted, included the amount of the drugs found; the use of the rental car; the fact that the hypothetical included two individuals; the fact that the individuals travelled a substantial distance; and the fact that the driver had no identification and gave a false name and false birth date. Essentially, the investigator noted these were indicators he observed during his narcotics task force career that people were in the business of selling drugs. Accordingly, we are satisfied the investigator's expert testimony conformed with the parameters of the holdings in *Odom* and *Berry*.

■ Based on the content of the record, including Investigator Baum's testimony, we are persuaded the jury had before it ample evidence to support defendant's conviction on constructive possession grounds. Unlike *Whyte* and *Miller* where the evidence did not support constructive possession, the evidence here, when carefully scrutinized, supports the inference defendant and Patrick were drug dealers making a drug run to New York City. The inference was supported by several significant circumstances—the large quantity of drugs seized; the significant distance the two travelled; the use of a rental car to avoid any forfeiture of their own vehicle if stopped and charged with drug transportation; defendant's use of a false name and date of birth, representations the jury could reasonably infer a person unaware of the drugs in the car would not have made; and Patrick's conduct observed by the arresting trooper. From the latter conduct, the jury could reasonably have inferred the cocaine was between the two front seats, therefore previously visible to defendant in the drive from

New York City, and Patrick put it in his waist band in an effort to avoid its discovery.

In sum, there was sufficient evidence from which the jury could reasonably infer defendant was a knowing participant in a transaction to buy and resell cocaine and that he constructively possessed the cocaine found on Patrick. We conclude defendant's remaining contentions are without merit. *R.* 2:11–3(e)(2). Consequently, we affirm the judgment of conviction under appeal.

Affirmed.