775 A.2d 519 (2001)
341 N.J. Super. 354
STATE of New Jersey, Plaintiff-Respondent,
v.
Ghadb EL MOGHRABI, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Sultan M. Araishi, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 2001.
Decided May 23, 2001.
*522 Marc C. Gettis, Gillette, argued the cause for appellant Ghadb El Moghrabi.
Roger L. Camacho, Newark, Designated Counsel, argued the cause for appellant Sultan Araishi (Peter A. Garcia, Acting Public Defender, attorney; Mr. Camacho, of counsel and on the brief).
Janet Flanagan, Deputy Attorney General, argued the cause for respondent (John J. Farmer, Jr., Attorney General, attorney; Ms. Flanagan, of counsel and on the brief).
Before Judges KING, COBURN and LEFELT. *520
*521 The opinion of the court was delivered by COBURN, J.A.D.
Defendants, Ghadb El Moghrabi and Sultan Araishi, separately appealed from judgments entered after a joint jury trial. The judgments established their guilt under N.J.S.A. 2C:21-21c(4), a provision of the New Jersey Anti Piracy Act. That provision, in relevant part, prohibits the possession for profit of videocassettes that "do not clearly and conspicuously disclose the true name and address of the manufacturer." The trial judge sentenced defendants to probation for five years and imposed on each a fine of $15,000. Both defendants contend that the statute is unconstitutionally vague because of its failure to define "manufacturer" and that the judge's charge defining "manufacturer" was erroneous. In addition, Araishi contends that the judge erred in denying his motion for acquittal and in imposing the fine. We consolidate their appeals for purposes of this opinion and affirm the judgments.
At about 3:30 a.m. on July 31, 1996, on the New Jersey Turnpike, two state troopers stopped a speeding minivan. Moghrabi was driving and Araishi was beside him. While standing at the passenger window, one of the troopers noticed a white videocassette box with the title "Independence Day" on the bench seat directly behind the defendants. The title alerted him to the possibility of criminal activity since he knew that the film was then playing in movie theaters. He noticed ten cardboard boxes behind the bench seat. Moghrabi admitted to the officer that he had about a thousand videocassettes in the cardboard boxes and that he knew they were illegal copies. The officer picked up the "Independence Day" box and noticed that the labeling was a poor reproduction of a legitimate label. He then inspected the ten cardboard boxes, some of which had "Amaray" printed on them, and found them to be filled with what turned out to be 800 videocassettes in individual boxes or jackets. An expert witness testified that "Amaray" boxes are often used to transport unauthorized videotapes and that all the videocassettes were unauthorized copies of films. She was further able to identify them as pirated because the films either had not been released on cassette format, or because the videocassettes were not professionally packaged or labeled, lacked a distinct mark called a heat stamp that is present on authorized tapes, or were of inferior quality. There were about a dozen different movie titles. Neither defendant offered any evidence other than by cross-examination. Both defendants lived in New York State, Moghrabi in Yonkers and Araishi in the Bronx. The minivan was apparently registered to Moghrabi who produced a Colorado driver's license; Araishi produced a Massachusetts driver's license. Throughout the confrontation Araishi was calm and fully complied with the trooper's instructions.
The section of the Anti-Piracy Act with which we are concerned reads in full as follows:
*523 c. A person commits an offense who:. . . .
(4) For commercial advantage or private financial gain, knowingly advertises or offers for sale, resale or rental, or sells, resells, rents or transports, a sound recording or audiovisual work or possesses with intent to advertise, sell, resell, rent or transport any sound recording or audiovisual work, the label, cover, box or jacket of which does not clearly and conspicuously disclose the true name and address of the manufacturer, and, in the case of a sound recording, the name of the actual performer or group.

[N.J.S.A. 2C:21-21c(4).]
The defendants contend that since "manufacturer" is not defined in the statute it could be understood as referring to the person or entity that (1) transferred the movie onto the cassette; (2) made the cartridge or casing; (3) made the original movie; (4) transferred the movie from a master copy; (5) owns the copyright for the movie; or (6) was licensed by the copyright owner to transfer the images to the cassette tape. As a result, they claim the statute violates the due process clause of the federal constitution because it is vague on its face. We disagree.
A law violates due process "if it is so vague that persons `of common intelligence must necessarily guess at its meaning and differ as to its application.'" Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983) (citing Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). Since a legislative enactment is cloaked with a "strong presumption" of constitutionality, it "will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt." State v. Muhammad, 145 N.J. 23, 41, 678 A.2d 164 (1996). The burden of proof rests on the party challenging the law's constitutionality. State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998). "Absent any explicit indications of special meanings, the words used in a statute carry their ordinary and well-understood meanings." State v. Afanador, 134 N.J. 162, 171, 631 A.2d 946 (1993) (citations omitted).
This statute has two purposes: to protect the rights of copyright owners through the prevention of pirating and to protect the public from being victimized by false and deceptive commercial practices. The first purpose is accomplished indirectly by subsection c(4), which serves the second purpose. See N.J.S.A. 2C:21-21, Assembly Judiciary, Law and Pub. Safety Comm. Statement to Assembly, No. 4232-L.1991, c. 125 (stating, in pertinent part, that the "bill does the following: (1) Requires that recordings distributed in New Jersey display the name and address of the manufacturer for `truth in labeling' purposes. See paragraph (4) of subsection c."); see also Anderson v. Nidorf, 26 F.3d 100 (9th Cir.1994), cert. denied, 514 U.S. 1035, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995) (upholding California's Anti Piracy statute, which, in pertinent part, is indistinguishable from ours, as a valid protection of the public against commercial deception and as neither preempted by federal copyright law, facially invalid under the First Amendment, nor overbroad).
In State v. Afanador, the Court found that the words "organizer, supervisor, financier or manager" used in the so-called "drug kingpin" statute, N.J.S.A. 2C:35-3, were not so ambiguous that they would "send the average citizen scrambling for a dictionary." 134 N.J. at 171, 631 A.2d 946.
Similarly here, the word "manufacturer" hardly requires reference to a dictionary *524 for its understanding. Nor is there any ambiguity in its use in the context of this statute. The statute is concerned with audiovisual works, not their containers. Its evident purpose is to assist consumers by mandating that the manufacturer of the videocassette in question market the product with appropriate identification of the source so that if there are problems or complaints respecting the quality of the reproduction, the consumer will know where to lodge a complaint. Anderson v. Nidorf, 26 F.3d at 102. No purpose would be served in terms of consumer protection for "manufacturer" to be construed as having any of the meanings suggested by defendants except the first, i.e., the creator of the actual videocassette tape, the one who transferred the film onto the tape.
In Commonwealth v. Martin, 694 A.2d 343 (Pa.Super.Ct.1997), the meaning of Pennsylvania's Anti-Piracy statute was considered. Like our statute, it provides that a videocassette has to "contain on its packaging or label the true name of the manufacturer." 18 Pa. Cons.Stat. Ann. § 4116(e). It further defines "manufacturer" as the "person or entity which authorized or caused the recording or transfer of sounds, images or a combination of sounds and images to the recorded device in issue. The term shall not include the manufacturer of the cartridge or casing itself." 18 Pa. Cons.Stat. Ann. § 4116(a). The defendant contended that the statute could be referring either to the maker of the videocassette tape or the original producer of the film copied onto the tape. The court rejected that contention, upholding a jury charge that defined "manufacturer" as "the person who manufactured that movie onto the tape that's in that recorded device." Id. at 346. The court said that "it was the legislature's intent that every videotape shall contain on its packaging the true name of the manufacturer who formatted the movie for videotape, thereby authorizing its release in videotape format." Id. at 347. The statute's specific definition of manufacturer played no role in the court's analysis.
Under our statute, an audiovisual work may not be possessed with intent to gain profit unless the work externally discloses, clearly and conspicuously, the "true name and address of the manufacturer." The quoted phrase, there being no other reference point, obviously refers to the maker of the audiovisual work, i.e., the one who transferred the film images to the particular tape possessed. Therefore, we perceive no vagueness whatsoever. Of course, the evidence showed without contravention that none of the videocassettes in question contained the required information.
In charging the jury, the judge defined "manufacturer"
to mean the person or entity, that made the original audio-visual work, or any other person or entity authorized by such person or entity to produce the same.
In the charge conference one defendant asked that the judge not define "manufacturer," while the other asked for the charge to include all the definitions described above. Following the jury charge, neither defendant took exception to the precise wording of the charge as given. R. 1:7-2.
In instructing a jury in a criminal case a judge is required "to clarify statutory language that prescribes the elements of a crime when clarification is essential to ensure that the jury will fully understand and actually find those elements in determining the defendant's guilt." State v. Alexander, 136 N.J. 563, 571, 643 A.2d 996 (1994). That principle requires at times judicial definition even of "words whose meanings are ordinary and *525 understandable." Id. at 573, 643 A.2d 996. Moreover, "[a]n instruction that makes explicit the implicit elements of the crime does not involve rewriting the statute or redefining, modifying, amending, or adding to the substantive elements prescribed by the statute because that instructional definition conforms to the legislative intent and carries out that intent." Id. at 574, 643 A.2d 996. Under those principles, the judge's charge defining "manufacturer" is unassailable, although the deletion of word "original" would have been an improvement since it might be taken as referring to an authorizing entity. In the context of this case, however, the word could not have caused confusion since the evidence showed unequivocally that none of these audiovisual works were authorized, that most of the films from which they were taken had not been legally released in videocassette form, and none contained a name and address of any videocassette manufacturer. Thus, in this case the word "original" simply referred to the person or entity that placed the images on the 800 cassette tapes, a definition in conformance with the statute.
Araishi moved for a judgment of acquittal pursuant to R. 3:18-2, claiming the evidence was insufficient to warrant a conviction because it could not support the inference that he was in constructive possession of the 800 pirated videocassettes.
The standard of review is
whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
[State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967).]
Constructive possession may be found where "there is an intention to exercise control ... manifested in circumstances where it is reasonable to infer that the capacity to do so exists." State v. Brown, 80 N.J. 587, 597, 404 A.2d 1111 (1979). Of course, possession can be jointly shared. Ibid. While mere presence is insufficient, id. at 595, 404 A.2d 1111, other circumstances tending to permit the inference may provide sufficient evidence of guilt. Ibid. In considering whether a jury should be permitted to conclude that a defendant was in possession of the prohibited material, we must remember that "a jury may draw an inference from a fact whenever it is more probable than not that the inference is true; the veracity of each inference need not be established beyond a reasonable doubt in order for the jury to draw the inference." Id. at 592, 404 A.2d 1111.
The significant facts in this case are (1) the defendants lived relatively near each other in New York State; (2) the arrest occurred on a major New Jersey highway at 3:30 a.m.; (3) the driver acknowledged that he was in possession of almost 1,000 pirated videocassettes; (4) the videocassettes were contained in ten separate boxes; (5) the boxes, which were not concealed, were within sight of defendant; and (6) an obviously pirated videocassette box was located on the rear seat in plain view.
In State v. Palacio, 111 N.J. 543, 545 A.2d 764 (1988), which involved an automobile stop leading to a prosecution for possession of fifteen pounds of cocaine concealed in a secret compartment, the Court identified a number of relevant facts supporting the jury's determination that the passenger was a joint, constructive possessor: the large quantity and high value of the drugs; the accessibility of the drugs, even though hidden, to both occupants; *526 the driver's obvious involvement in drug trafficking; both participants residing in the same, distant area, suggesting they had traveled together for a considerable distance and knew each other; the nervous conduct of the passenger; and the occurrence of conversations between driver and passenger which they sought to keep concealed from the police. Id. at 552-53, 545 A.2d 764.
The only factors present in Palacio and not present here concern the conduct of Araishi after the stop. Nothing he did after the stop suggested involvement in the crime. But the other factors clearly indicated his knowing involvement. A reasonable jury, based on the residences of the defendants in nearby locations in New York State and the location and time of the stop (3:30 a.m.) could infer that the defendants had been in the car together for a substantial period of time and knew one another. Moreover, the time of travel suggested an intent to avoid detection. The large quantity and location of the videocassettes suggested awareness of their presence by both defendants. Also, the large quantity (and implied substantial value), together with the driver's admitted possession, indicated that he would have been unlikely to include a stranger on the trip, and that anyone with him was likely involved in the criminal enterprise. The presence of the illegal videocassette box in plain view on the rear seat further strengthened the inference that Araishi was aware of the contents of the boxes, which were also in plain view, and was participating in the crime.
Araishi relies primarily on three cases in support of his contention that the evidence was insufficient to support the inference of constructive possession: State v. Shipp, 216 N.J.Super. 662, 524 A.2d 864 (App.Div.1987); State v. Baker, 228 N.J.Super. 135, 549 A.2d 62 (App.Div.1988); and State v. Whyte, 265 N.J.Super. 518, 628 A.2d 340 (App.Div.1992), aff'd o.b., 133 N.J. 481, 628 A.2d 287 (1993). These cases are distinguishable.
In Shipp, the defendant was a front seat passenger and his stepmother was a rear seat passenger in an automobile. After the police stopped the driver for speeding, the stepmother was found to have had a substantial quantity of heroin in two envelopes in a vinyl bag that was next to her and that contained other items belonging to her. The three subjects had been traveling from New York City to Cleveland. We found there was insufficient evidence. In Palacio, the Court described Shipp as turning on the fact that the heroin was contained "in sealed envelopes in [the stepmother's] handbag, a highly personal and private location suggesting defendant did not have any knowledge of the drugs...." 111 N.J. at 552, 545 A.2d 764. The Court contrasted that fact with the circumstances in Palacio where "the drugs, while concealed, were in the car to which defendant or any other occupant had open and free access." Ibid. Since the large quantity of illegal goods in this case was unconcealed (except to a minimal degree by their placement in the ten boxes) and accessible, Shipp provides no support for Araishi's position.
In Baker, also involving an automobile stop, we distinguished Palacio primarily on the ground that the quantity and value of the cocaine hidden behind a panel was small, "little more than the [driver's] weekly supply ..." 228 N.J.Super. at 143, 549 A.2d 62, and would not support the inferences that the driver "was a smuggler, or that the cargo was so valuable that he would not have taken on passengers unless they not only knew it was there but also possessed it." Ibid. Here, by contrast, the driver was admittedly involved in illegally possessing and transporting a large and obviously valuable cargo. Moreover, the cargo was essentially in plain view.
*527 In Whyte, the police stopped a van with four occupants and found seven and three-quarter ounces of cocaine with a street value of about $43,000 concealed within the upholstery at the back of the rear left captain's chair. Also concealed were two bags, one containing a handgun and ammunition, the other containing drug paraphernalia. The passengers were cooperative and appeared at ease. There was no evidence indicating they were embarked on a lengthy journey. In a 2-1 per curiam decision, which was affirmed on the opinion below by a 4-3 Supreme Court decision, 133 N.J. 481, 628 A.2d 287 (Chief Justice Wilentz, and Justices Handler and Garibaldi dissenting for the reasons expressed by Judge Shebell in his dissent), this court held that there was insufficient evidence to support the passengers' conviction, with the following comments:
Although the case before us is close, we are persuaded that the totality of the circumstances, even if we fully credit the State's case, cannot convert the presence of these defendants in the place where the concealed contraband was found into a knowing control and dominion over it. The only circumstance placing this case in the Palacio rather than the Shipp column is the fact that the contraband was concealed within the vehicle itself rather than on the person or within the personal belongings of any one passenger. None of the other Palacio circumstances are here present. The contraband here did not have a value of anything like the magnitude which apparently influenced the Court in Palacio. None of the passengers acted in any way furtively or suspiciously. If we assume that the trip originated either in the Bronx or in Brooklyn, it was relatively brief in both distance and duration. We certainly could not, nor could a jury, speculate on its destination. There is no other fact here indicating the passengers' knowledge that the van contained contraband, no less that they were co-possessors of it. In sum, while there may be a fine line between Palacio and Shipp, we are persuaded that this case is on the Shipp side of it. There is a world of difference between speculation and legitimate inference, and we conclude that the convictions here rested on speculation.
[265 N.J.Super. at 524-25, 628 A.2d 340.]
Although Whyte appears to provide substantial support for defendant's position in this case, it does not carry the day. For in Whyte the court noted that "[t]here is no other fact here indicating the passengers' knowledge that the van contained contraband, no less that they were co-possessors of it." Id. at 525, 628 A.2d 340. Here, such additional evidence is present in that there were ten boxes of criminal material not hidden but in plain view and there was a pirated videocassette box lying on the rear seat directly behind the defendant. That evidence, together with the other circumstances, provided a sufficient basis for the inference that the defendant was involved in the criminal enterprise.
Finally, Araishi contends that the judge erred in imposing the $15,000 fine in that he failed to find that a fine was "specifically adapted to deterrence of the type of offense involved or to the correction of the offender," N.J.S.A. 2C:44-2a(1), and failed to determine that the "defendant is able, or given a fair opportunity to do so, will be able to pay the fine," N.J.S.A. 2C:44-2a(2). The maximum fine for the offense involved is $250,000. N.J.S.A. 2C:21-21d(1).
After noting that the defendant was then on probation from the State of Virginia for essentially the same offense, the judge, fully meeting the requirement of N.J.S.A. 2C:44-2a(1), explained that she was imposing the fine *528 because it is clear that based upon the volume of the audio visual tapes which the defendant possessed that the motivation was certainly financial gain. To allow such motivation to go without economic consequence would serve to send the wrong message to this defendant and others of the [im]propriety in engaging in such illegal trade.
Although the judge did not discuss the defendant's ability to pay, defendant, age thirty-six, had conceded that he was capable of earning a living and that he was then receiving $150 a week from a part-time job. That evidence provided a sufficient basis for the judge to conclude (as she implicitly did) that given a fair opportunity the defendant would be able to pay the fine. See State v. Newman, 132 N.J. 159, 169-73, 623 A.2d 1355 (1993).
Affirmed.