**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0034-18T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BEATRICE J. RAMIREZ,

    Defendant-Appellant.

_____

> Submitted October 20, 2020 – Decided  December 1, 2020
>
> Before Judges Yannotti and Haas.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 17-10-0966.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Michele A. Adubato, Designated Counsel, on the brief).
>
> Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Mark Niedziela, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant was tried before a jury, found guilty of unlawful possession of a controlled dangerous substance (CDS), and sentenced to one year of probation. She appeals from the judgment of conviction dated August 14, 2018. We affirm.

I.

In October 2017, a Passaic County grand jury returned a twenty-four-count indictment charging defendant with fourth-degree possession of a CDS (marijuana), N.J.S.A. 2C:35-10(a)(3) (count one); third-degree possession of a CDS (marijuana), with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count two); fourth-degree possession of a CDS (hashish), N.J.S.A. 2C:35-10(a)(3) (count three); and third-degree possession of a CDS (hashish) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11) (count four). Darren E. Richardson, George E. Thomas, Shaina M. Harris, Daniel F. Valerio, Leonardo J. Barragan, and Kenneth Coe also were charged in the indictment with various offenses related to the possession of a CDS.[1]

Defendant filed a motion to suppress evidence, which the trial court denied. Prior to trial, Barragan pled guilty to count twenty-two of the indictment, in which he was charged with third-degree possession of marijuana

---

[1] The State and defendant refer to Thomas as George Thomas Cespedes.

with intent to distribute. In addition, Coe pled guilty to count twenty-three in which he was charged with fourth-degree possession of marijuana. It is unclear from the record how the charges against Cespedes and Harris were resolved. Defendant, Richardson, and Valerio were tried before a jury.

At the trial, Detective Vincent Ricciardelli testified that in August 2017, he was employed by the Wayne Township Police Department (WTPD) and assigned to its Special Operations and Narcotics Bureau. He was assisting the Passaic County Prosecutor's Office (PCPO) in its investigation of Harris and Cespedes regarding the illegal possession and distribution of marijuana.

Ricciardelli said the officers had search warrants for Harris's residences on Lake Drive in Haskell, New Jersey, and on Front Street in Paterson, New Jersey, but Harris could not be found at those locations. The officers contacted an informant who told them Harris was going to be at a Ramada Inn in Wayne.

On August 2, 2017, Ricciardelli and Detective Paul Kindler of the WTPD went to that location. Ricciardelli testified that he observed Harris enter the hotel. Ricciardelli and Kindler then set up surveillance at the hotel, using its surveillance cameras. He saw Richardson, whom he knew from a prior narcotics investigation. Ricciardelli knew Richardson was supposed to be on home

A-0034-18T2

detention as a condition of bail for other CDS charges. The hotel manager informed Ricciardelli that Richardson was staying in Room 245.

Ricciardelli stated that it appeared drug activity was taking place in and around Room 245. Ricciardelli observed several persons coming in and out of the room. Early in the afternoon, Ricciardelli observed a female, later identified as defendant, arrive at the hotel in a white Mercedes. She parked in the rear parking lot, near Room 245. She used a key card to enter the room.

She then exited the room, got into the Mercedes, and drove around to the front of the building. Defendant later drove to the rear of the building and parked the Mercedes alongside a Jeep. She used a key fob to open the doors to the Jeep and placed an object into that vehicle. She then returned to Room 245.

On August 3, 2017, Ricciardelli and Kindler continued their surveillance at the hotel. Ricciardelli saw Richardson and Barragan coming in and out of Room 245, and he observed Richardson leave the room with a brown paper bag. Richardson went to the white Mercedes, placed the bag on the rear passenger seat, and returned to the room. A short time later, Richardson exited Room 245 with a small paper bag which he placed in the front passenger seat of the Mercedes. Richardson returned to the room, while defendant and an unknown male drove off in the Mercedes.

A-0034-18T2

That afternoon, Ricciardelli observed a white Nissan Maxima arrive and park in the rear of the Ramada Inn. Two males, who were later identified as Coe and Valerio, exited the car. Coe had been driving the Nissan, and Valerio was the passenger. They met Richardson on the second-floor balcony outside Room 245 and had a short conversation. Coe entered Room 245 but remained in the open doorway. He had a black plastic bag in his hand. He appeared to open the bag and show Richardson its contents. Defendant and Barragan left the room.

A short time later, Coe emerged from the room. He was holding a small, white plastic shopping bag. Coe and Valerio went down the stairs and departed in the white Nissan Maxima. Ricciardelli radioed units in the area and informed them that a drug transaction apparently had taken place. He directed the units to make an investigatory stop of the car.

At the time, Detective Gary Bierach of the Totowa Police Department (TPD) and another detective were stationed on Route 46 in Totowa, a short distance from the hotel. They followed the Nissan and conducted a motor vehicle stop. Bierach reported to Ricciardelli what had happened during the stop. Ricciardelli decided to secure Room 245 at the Ramada Inn and either obtain consent to search the room or apply for a search warrant. He was concerned that evidence could be altered or destroyed.

Ricciardelli knocked on the door and loudly announced, "Police." The door was ajar and he could smell a heavy odor of raw marijuana. Richardson, Barragan, and defendant were in the room. The officers placed them under arrest. They then closed and locked the door. Two officers were posted outside to ensure no one went in or out of the room. Officers also monitored the Mercedes.

Ricciardelli and another detective submitted an affidavit in support of an application for a search warrant for Richardson's room and the Mercedes. On August 4, 2017, a judge issued the warrants, which were executed that day.

On a writing desk, the officers found a partially-smoked marijuana cigarette, a box of unused sandwich bags, a box of tin foil, an open roll of black garbage bags, a box of rubber bands, a pipe used to smoke tetrahydrocannabinol (THC) oil, and two containers with a residue of oil. In a wastepaper basket under the table, the officers found a clear Tupperware container with a digital scale and two bags of suspected raw marijuana.

Behind the door, the officers found a black garbage bag with trash. In the bag, the officers recovered a large food bag with suspected marijuana and a bag containing three empty plastic bags. On the bed, the officers found an open suitcase with a food saver bag. They found $3,055 in cash on the nightstand, of

6

which $3,000 was wrapped in $1,000 bundles with rubber bands. In the refrigerator, the officers found two sheets of THC wax, which were wrapped in wax paper.

In a compartment in the trunk of the Mercedes, the officers recovered $17,500 in cash, of which $17,000 was wrapped in $1,000 bundles with rubber bands similar to those found in the room. The money was in white and black plastic bags, which were stuffed inside an empty box that had been placed into another box.

On cross-examination, Ricciardelli stated that he contacted the Passaic County Sheriff's Office and requested a K-9 team to examine Room 245 and the Mercedes for the presence of a CDS. The team arrived after the officers secured the room. Ricciardelli said the dog sniffed the Mercedes and the area of the room but did not provide a conclusive "alert" of the presence of a CDS at either location.

Bierach testified that in August 2017, he was employed by the TPD and assigned to the PCPO's Narcotics Task Force. He stated that on August 3, 2017, he was with another detective in an unmarked car. After receiving a communication from Ricciardelli, Bierach observed the white Nissan traveling

east on Route 46. Bierach activated the lights and sirens on his vehicle and stopped the Nissan.

Coe and Valerio were in the car. Bierach approached the car from the driver's side and detected a strong odor of marijuana. He asked Coe and Valerio to exit the vehicle. According to Bierach, Valerio blurted out that he had "a bag of weed,"[2] removed the bag from the waistband of his pants and handed it to Bierach. Valerio and Coe were arrested.

Bierach performed a visual search of the interior of the car. He observed a white plastic bag and marijuana. On the passenger side door, Bierach found a pull-string bag that contained marijuana and a grinding device. In a compartment in the trunk, the officers recovered $17,500 in cash bundled in rubber bands similar to those found in the room. Valerio and Coe were transported to the TPD. Bierach transported the evidence to police headquarters and then returned to the Ramada Inn to assist in securing the individuals in Room 245. The following day, he returned to the hotel and assisted the other officers in executing the search warrants.

_____

[2] During trial, the court conducted a N.J.R.E. 104 hearing and struck from the record Bierach's testimony that Valerio said he had a "bag of weed" on the basis that it was made in violation of Miranda v. Arizona, 384 U.S. 436 (1966). Consequently, Valerio's charge was reduced to the possession of marijuana, a disorderly persons offense.

A-0034-18T2

Lieutenant Harrison Dillard of the Morris County Prosecutor's Office testified as an expert in street-level drug distribution. Dillard described marijuana and its characteristics, including its odor. He discussed the use of motel rooms and automobiles in drug-distribution schemes. He also discussed the packaging of marijuana. He described THC, THC wax, and the significance of the packaging of cash in bundles using rubber bands.

Valerio testified that on August 3, 2017, he went with Coe to the Ramada Inn in Coe's white Nissan. He admitted that earlier that day, he smoked marijuana. They got out of the car and went to Richardson's room. Coe was carrying a black plastic bag with White Owl cigars. Richardson greeted them. Coe went into the room, and Valerio remained outside on the second-floor balcony, smoking a cigarette.

Valerio testified that Coe was carrying a white plastic bag when he left the room, but he did not know what was in the bag. They got into the car. Valerio said he did not know what Coe did with the white plastic bag. They left the hotel and drove to Totowa. On the way, the police stopped the car.

Richardson did not testify at trial. However, he called his mother as a witness. She stated that she had been living with defendant, Harris,[3] and others

---

[3] Harris is Richardson's sister.

A-0034-18T2

at a home on Lake Drive in Haskell. Richardson's mother said the family had to vacate the Lake Drive residence by the end of July 2017. She moved to a hotel in Ramsey, and Richardson rented a room at the Ramada Inn in Wayne. She said suitcases from Harris's room at the Lake Drive residence were transported to Richardson's room at the Ramada Inn.

Defendant did not testify. She did not call any witnesses. The jury found defendant not guilty on counts one, two, and four, but guilty on count three (fourth-degree possession of a CDS, hashish).

The jury found Richardson guilty on counts five (fourth-degree distribution of a CDS, marijuana), six (fourth-degree possession of a CDS, marijuana), seven (third-degree possession of a CDS, marijuana, with intent to distribute), and nine (fourth-degree distribution of a CDS, hashish). In addition, the jury found Valerio not guilty on the disorderly persons charge of possession of marijuana.

As we stated previously, the trial court sentenced defendant to one year of probation and entered a judgment of conviction dated August 14, 2018. Defendant appeals and raises the following arguments:

> POINT I
> SINCE THE EVIDENCE SEIZED FROM THE
> HOTEL ROOM AND MERCEDES VIOLATED
> DEFENDANT'S RIGHTS AGAINST UNLAWFUL

10

SEARCH AND SEIZURE GUARANTEED BY THE UNITED STATES AND NEW JERSEY CONSTITUTIONS, THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

POINT II
THE ADMISSION OF CERTAIN INFLAMMATORY EVIDENCE OVER THE DEFENSE OBJECTION DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT III
THE SUPPRESSION OF EXCULPATORY EVIDENCE BY THE STATE VIOLATED BRADY v. MARYLAND[, 373 U.S. 83 (1963)].

POINT IV
THE TESTIMONY OF THE DRUG EXPERT EXCEEDED THE BOUNDS OF ACCEPTABLE EXPERT TESTIMONY AND DEPRIVED DEFENDANT OF A FAIR TRIAL.

POINT V
IT WAS ERROR FOR THE TRIAL COURT TO DENY DEFENDANT'S MOTION FOR A MISTRIAL.

POINT VI
THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR ACQUITTAL AT THE END OF THE STATE'S CASE.

II.

Defendant argues that the trial court erred by denying her motion to suppress evidence obtained in the search of Room 245 at the Ramada Inn and her white Mercedes. She contends the officers' initial warrantless entry into

11

Room 245 was unconstitutional. She also contends the officers had no concrete basis to believe exigent circumstances existed or that defendants would destroy evidence.

When reviewing the denial by a trial court of a motion to suppress evidence, we defer to a trial court's findings of fact "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015). An appellate court should disregard those findings of fact only if they are "clearly mistaken." Ibid. On the other hand, a trial court's legal conclusions are not entitled to special deference and are reviewed de novo. Id. at 263.

"The Fourth Amendment to the United States Constitution and Article I, paragraph [seven] of the New Jersey Constitution require that police officers obtain a warrant 'before searching a person's property, unless the search falls within one of the recognized exceptions to the warrant requirement.'" State v. Cassidy, 179 N.J. 150, 159-60 (2004) (quoting State v. DeLuca, 168 N.J. 626, 631 (2001); U.S. Const. amend IV; N.J. Const. art. I, ¶ 7).

"Exigent circumstances" constitutes a "predominant exception" to the warrant requirement. Cassidy, 179 N.J. at 160. "[E]xigent circumstances, coupled with the existence of probable cause, will excuse a police officer's

failure to have secured a written warrant prior to a search for criminal wrongdoing." Ibid. This doctrine "lacks neatly defined contours" and courts "must conduct a fact-sensitive and objective analysis . . . ." Ibid.

"[C]ircumstances have been found to be exigent when they 'preclude expenditure of the time necessary to obtain a warrant because of a probability that the suspect or the object of the search will disappear, or both.'" Ibid. (quoting State v. Smith, 129 N.J. Super. 430, 435 (App. Div. 1974)). Courts should also consider:

> The degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or seriousness of the offense involved; the possibility that a suspect was armed or dangerous; and the strength or weakness of the underlying probable cause determination.
>
> [Deluca, 168 N.J. at 632-33.]

"Where the threatened removal of drugs from a residence is offered as an exigent circumstance, 'whether the physical character of the premises is conducive to effective surveillance, as an alternative to a warrantless entry, while a warrant is procured' must be considered." State v. De La Paz, 337 N.J. Super. 181, 196 (App. Div. 2001) (quoting State v. Alvarez, 238 N.J. Super. 560, 568 (App. Div. 1990)). Further, "[p]olice-created exigent circumstances

13

which arise from unreasonable investigative conduct cannot justify warrantless home entries." Ibid.

Here, the judge noted that occupants of a hotel room have expectations of privacy that differ from those in a residence. The judge noted that the officers observed Richardson go back and forth to defendant's car several times and place a bag in the car. The officers also observed Coe arrive at the hotel and show Richardson a bag. Coe entered the room and later left with a different bag. The judge found that, based on their training and experience, the officers had a good faith basis for believing a crime had been committed.

The judge also noted that after Coe and Valerio left the hotel, the officers had Coe's Nissan stopped on Route 46. Bierach approached the car and detected the odor of marijuana. The judge found that Bierach had a reasonable suspicion to believe the Nissan contained narcotics. The judge stated that the officers validly undertook a warrantless search of the Nissan.

The judge further found that thereafter, the officers at the hotel had sufficient information to undertake an investigatory sweep of Room 245 and detain defendant and Richardson so that the suspected marijuana inside the room was not destroyed. The judge rejected the assertion that the officers created an

14

exigency. We are convinced there is sufficient credible evidence in the record to support the trial court's findings.

We reject defendant's contention that the officers had sufficient time to obtain a warrant before entering the hotel room. The judge noted that under the circumstances, there was an opportunity for the destruction of evidence. Indeed, as the State points out, after Coe and Valerio were stopped, they could have informed defendant of the stop, which could have led to the destruction of evidence.

Defendant contends the officers obtained the warrant in an attempt to legitimatize the unconstitutional warrantless search of the room. However, the record supports the judge's finding that the officers lawfully entered the room to remove the occupants and secure the premises to ensure evidence would not be lost or destroyed. The judge noted that the officers did not search the room until after they obtained a warrant.

Defendant further argues that the judge erred by finding the search of the room and Mercedes was constitutionally permissible. She contends the search warrant application contained lies, misstatements, and omissions of material facts. She asserts that the warrant affidavit erroneously stated that Valerio blurted out that he was in possession of marijuana. Defendant also asserts the

affidavit falsely stated that the surveillance at the hotel was for the purpose of executing the warrants for Harris. In addition, she asserts that the affidavit did not state that the K-9 failed to provide a positive alert for contraband.

"It is well settled that a search executed pursuant to a warrant is presumed to be valid and that a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). "[T]he probable cause standard 'is a well-grounded suspicion that a crime has been or is being committed.'" State v. Moore, 181 N.J. 40, 45 (2004) (quoting State v. Nishina, 175 N.J. 502, 515 (2003)).

Here, the warrant affidavit contained sufficient facts to establish probable cause for issuance of the search warrants. The affidavit indicated that the officers had stopped the Nissan, detected the odor of marijuana coming from the car, and found marijuana in the back seat. In addition, the affidavit noted the exchange of bags at the hotel, one of which was found in the car containing marijuana.

The failure to state that the K-9 had not provided an "alert" of the presence of CDS at the hotel room or Mercedes did not render the affidavit

16

constitutionally deficient.  As Ricciardelli explained, the dog's failure to provide a conclusive alert of CDS at those locations was due to the open-air nature of the area and odor of marijuana throughout the entire area.  The failure to include these facts in the affidavit was not a material omission.

Moreover, the record does not support defendant's assertion that the surveillance was conducted solely for the purpose of obtaining information about Richardson.  The officers were attempting to execute the warrants regarding Harris when they observed Richardson engage in what appeared to be illegal activity at the hotel. The detectives knew Richardson from previous investigations of illegal drug activity.

The trial court correctly found that the facts stated in the warrant affidavit established probable cause for the issuance of the warrants to search the hotel room and Mercedes. The affidavit did not omit material facts or include misstatements of fact material to the probable cause determination.

### III.

Next, defendant argues she was denied a fair trial because the trial court permitted the State to introduce evidence that the officers recovered $17,500 from the Mercedes.  She contends the State failed to establish a sufficient nexus

between that money and any unlawful activity in Room 245. She also argues the evidence was unduly prejudicial. We disagree.

A trial court's evidentiary rulings "should be upheld 'absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" State v. Perry, 225 N.J. 222, 233 (2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "An appellate court applying this standard should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

Rule 402 states that "[a]ll relevant evidence is admissible," unless otherwise prohibited under the rules of evidence or the law. N.J.R.E. 402. Rule 401 defines relevant evidence as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. However, relevant evidence may be excluded "if its probative value is substantially outweighed by the risk of: (a) [u]ndue prejudice, confusing the issues, or misleading the jury; or (b) [u]ndue delay, wasting time, or needlessly presenting cumulative evidence." N.J.R.E. 403.

The record supports the trial judge's finding that there was a nexus between the money found in the Mercedes and the unlawful activity in Room

A-0034-18T2

245. The judge noted that the money was packaged in "the same way" as the money found in the room. Moreover, defendant was seen coming and going from the room, and Richardson also was seen entering the Mercedes and placing bags in the car. There also was no basis for excluding this evidence under N.J.R.E. 403. The evidence was probative to the charges against defendant, and the probative value of the evidence outweighed any prejudice to defendant from its admission.

## IV.

Defendant contends the State violated Brady by failing to disclose certain evidence in discovery. She contends the evidence would have been favorable to the defense. Again, we disagree.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. In determining if there has been a Brady violation, we consider:

> (1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case.

[Brown, 236 N.J. at 518.]

"The existence of those three elements evidences the deprivation of a defendant's constitutional right to a fair trial under the due process clause." Ibid.

In most cases, consideration of the first two elements "is a straightforward analysis." Ibid. When considering the third element, a court should "'examine the circumstances under which the nondisclosure arose' and '[t]he significance of a nondisclosure in the context of the entire record.'" Ibid. (quoting State v. Marshall, 123 N.J. 1, 199-200 (1991)). Then, the court should "consider the strength of the State's case, the timing of disclosure of the withheld evidence, the relevance of the suppressed evidence, and the withheld evidence's admissibility." Id. at 519.

Further, "[e]stablishing materiality 'does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.'" Id. at 520 (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)). Rather, the primary inquiry is "whether in the absence of the undisclosed evidence the defendant received a fair trial, 'understood as a trial resulting in a verdict worthy of confidence.'" State v. Nelson, 155 N.J. 487, 500 (1998) (quoting Kyles, 514 U.S. at 434).

Defendant contends the State failed to disclose that the K-9 team's dog did not provide a positive alert of marijuana at the hotel room or Mercedes. At trial, Ricciardelli stated that the dog did not provide a conclusive alert. He said that if the dog had done so, he would have mentioned it in his report.

Furthermore, the record shows that prior to trial, defendants knew about the dog's reactions during the sweep and questioned Ricciardelli about it on cross-examination. Defendant has not shown that the evidence would have been favorable to the defense or that she was prejudiced by the State's failure to provide the information earlier.

Defendant also contends the State failed to disclose that Valerio did not spontaneously state that he possessed marijuana. Defendant asserts that the record shows Valerio made the statement in response to the question, "Do you have anything on you."

However, as noted previously, the trial judge conducted a N.J.R.E. 104 hearing and suppressed the statement that Valerio made during the motor vehicle stop. The judge found the statement was elicited in violation of Miranda. In any event, the evidence regarding Valerio's statement was not material to the defense.

V.

Defendant argues that Dillard's testimony exceeded the bounds of acceptable expert testimony and deprived her of a fair trial. Dillard testified that the money the officers recovered in the hotel room and Mercedes was in small denominations and packaged in a manner indicative of past distribution of drugs. Defendant asserts Dillard impermissibly provided an opinion on an ultimate issue in the case.

To be admissible, an expert's testimony must address "a subject matter that is beyond the ken of the average juror." State v. Kelly, 97 N.J. 178, 208 (1984). The testimony must assist "the trier of fact [in] understand[ing] the evidence or determin[ing] a fact in issue." State v. Nesbitt, 185 N.J. 504, 514 (2006) (citing State v. Berry, 140 N.J. 280, 291 (1995)).

Here, the trial judge found that Dillard had not provided an opinion on an ultimate issue in the case. The judge instructed the jury that Dillard testified "that the denominations of money that were confiscated . . . were indicative of past distributions." The judge instructed the jury "to disregard any inference or suggestion that there was a distribution other than what is charged in this indictment . . . ."

22

We are convinced that the judge did not err by admitting Dillard's testimony regarding the money recovered in the hotel room and Mercedes. Dillard explained that the denominations were indicative of money used in "past distributions" of drugs. This was permissible expert testimony. Moreover, the judge provided a curative instruction and directed the jury to disregard any inference or suggestion that the money could have been derived from drug distributions other than those at issue in the case.

VI.

Defendant argues that the trial judge erred by denying her motions for a mistrial. The record shows that defendant sought a mistrial after Ricciardelli testified that a detective informed her of her <u>Miranda</u> rights when she was removed from the hotel room. Defendant also moved for a mistrial after Dillard testified that the denominations and bundling of the money found in the hotel room and Mercedes were indicative of "past drug distributions."

"A mistrial should only be granted 'to prevent an obvious failure of justice.'" <u>State v. Smith</u>, 224 N.J. 36, 47 (2016) (quoting <u>State v. Harvey</u>, 151 N.J. 117, 205 (1997)). "Whether an event at trial justifies a mistrial is a decision 'entrusted to the sound discretion of the trial court.'" <u>Ibid.</u> (quoting <u>Harvey</u>, 151 N.J. at 205). "Appellate courts 'will not disturb a trial court's ruling on a motion

for a mistrial, absent an abuse of discretion that results in a manifest injustice.'" Ibid. (quoting State v. Jackson, 211 N.J. 394, 407 (2012)).

When considering a motion for a mistrial, courts should consider the "unique circumstances of the case." Ibid. (citing State v. Allah, 170 N.J. 269, 280 (2002)); State v. Loyal, 164 N.J. 418, 435-36 (2000). "If there is 'an appropriate alternative course of action,' a mistrial is not a proper exercise of discretion." Ibid. (citing Allah, 170 N.J. at 281). Where inadmissible evidence has been introduced, the judge must consider whether it may be addressed by a "cautionary or limiting instruction" or whether it "requires the more severe response of a mistrial . . . ." State v. L.P., 352 N.J. Super. 369, 379 (App. Div. 2002) (quoting State v. Winter, 96 N.J. 640, 646-47 (1984)).

Here, the trial judge did not err by finding Ricciardelli's statement that defendant had been informed of her Miranda rights did not warrant a mistrial. The trial judge noted that jurors are well aware that persons who are arrested are informed of their Miranda rights. The judge pointed out that Ricciardelli did not comment on defendant's silence after she was informed of her Miranda rights. In addition, the judge instructed the jury to disregard Ricciardelli's statement about informing defendant of her Miranda rights. The denial of the motion for a mistrial was not an abuse of discretion.

A-0034-18T2

We reach the same conclusion on defendant's motion for a mistrial regarding Dillard's testimony that the money found in the hotel room and Mercedes were in denominations and packaged in a manner indicative of "past drug distributions." As we stated previously, Dillard's testimony did not address an ultimate issue in the case, and the judge instructed the jury to disregard any inference or suggestion that the money could have been derived from drug distributions other than those at issue in the case.

VII.

Defendant further argues that the trial judge erred by denying her motion for a judgment of acquittal. Defendant asserts she was never in physical possession of the CDS, was not registered at the hotel, was not present in the room when any alleged drug transaction took place, and was not seen placing anything in the car. Defendant therefore contends the State failed to present sufficient evidence to support a finding by the jury that she possessed a CDS with intent to distribute beyond a reasonable doubt.

"[T]he broad test for determination of . . . an application [for a judgment of acquittal] is whether the evidence at that point is sufficient to warrant a conviction of the charge involved." State v. Reyes, 50 N.J. 454, 458 (1967). In ruling on the motion, the trial judge "must determine . . . whether, viewing the

State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt." Id. at 458-59 (citing State v. Fiorello, 36 N.J. 80, 90-91 (1961)). On appeal, we "apply the same standard as the trial court to decide if a judgment of acquittal was warranted." State v. Felsen, 383 N.J. Super. 154, 159 (App. Div. 2006) (citing State v. Moffa, 42 N.J. 258, 263 (1964)).

In this case, defendant was charged under N.J.S.A. 2C:35-10(a)(3) with fourth-degree unlawful possession of a CDS (hashish). "Possession signifies intentional control and dominion, the ability to affect physically and care for the item during a span of time." State v. Davis, 68 N.J. 69, 82 (1975). "Intentional control and dominion, in turn, means that the defendant was aware of his or her possession." State v. McCoy, 116 N.J. 293, 299 (1989) (citing State v. DiRienzo, 53 N.J. 360, 370 (1969)). Possession can be either actual or constructive. Ibid.

"Physical or manual control of the proscribed item is not required as long as there is an intention to exercise control over it manifested in circumstances where it is reasonable to infer that the capacity to do so exists." State v. Brown,

80 N.J. 587, 597 (1979) (citations omitted). "Thus, constructive possession exists when a person intentionally obtains a measure of control or dominion over the stolen goods although they are under the physical control of another." McCoy, 116 N.J. at 299 (citing State v. Kimbrough, 109 N.J. Super. 57, 64 (App. Div. 1970)).

"'Mere presence' at the place where the contraband is located is insufficient to establish constructive possession." State v. Randolph, 441 N.J. Super. 533, 558 (App. Div. 2015) (citing State v. Whyte, 265 N.J. Super. 518, 523 (App. Div. 1992)). "There must 'be circumstances beyond mere presence' that permit a reasonable inference of the defendant's intention and capacity to exercise control over the object and the defendant's knowledge of what the object is." Id. at 559 (citing Whyte, 265 N.J. Super. at 523). However, "[o]wnership in conjunction with possession is not a required element . . . [because] one can knowingly control something without owning it . . . ." Brown, 80 N.J. at 598.

We are convinced the judge did not err by finding that the State presented sufficient evidence upon which the jury could find defendant guilty of unlawful possession of a CDS beyond a reasonable doubt. Defendant was not observed

27

in actual possession of any CDS, but defendant was arrested in a hotel room in which the officers recovered CDS and drug paraphernalia.

Moreover, the officers recovered money in the Mercedes that was packaged like the monies recovered in the hotel room. In addition, the officers observed defendant driving the Mercedes and coming and going from Room 245 in the hotel. She also was present when the officers came to secure the room.

There was sufficient evidence that defendant's possession of the CDS was beyond "mere presence" when such CDS was recovered. The evidence was sufficient to "permit a reasonable inference of the defendant's intention and capacity to exercise control over the [CDS] and . . . defendant's knowledge of what the [CDS] is." Randolph, 441 N.J. Super. at 558-59.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION