**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2282-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RASHAUN K. HENRY, a/k/a
GREG SMITH, BOON,
RASHAUN BELK, SHAUN
BELK, RASHAWN HENRY,
SHAUN HENRY, SHAWN,
GREGORY MOORE, and
GREG SPINNER,

     Defendant-Appellant.

_____

Argued November 5, 2020 – Decided December 4, 2020

Before Judges Fuentes, Whipple and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 17-11-1489

Brian J. Neary argued the cause for appellant.

Ian C. Kennedy, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; Ian C. Kennedy, of counsel and on the brief).

PER CURIAM

Defendant Rashaun K. Henry appeals from a judgment of conviction for third-degree possession of marijuana, second-degree possession of marijuana with intent to distribute within 500 feet of a public park, and fourth-degree possession of drug paraphernalia with intent to distribute. The jury acquitted defendant of money laundering. In a bifurcated trial, the jury found defendant guilty of possession of a weapon by a previously convicted person. We affirm.

I.

These are the facts adduced at trial. On May 24, 2017, at 12:30 p.m., Detective Betina Finch and other members of the Bergen County Sheriff's Office lawfully entered defendant's home in Englewood, pursuant to a search warrant, where he resided with his wife Jennifer Henry (Jennifer)[1] and seven-year-old daughter. He was the target of a narcotics investigation. Defendant was sleeping in his bed. The home is located within 500 feet of Argonne Park and has three bedrooms and a barber shop near the kitchen. Detective Finch searched the kitchen while Detective James Eckert and another officer searched the bedrooms.

---

[1] We refer to Jennifer Henry by her first name for ease of reference and intending no disrespect.

 A-2282-18T4

While searching the kitchen, Detective Finch found a glass jar containing marijuana next to the barber's chair and a second jar of marijuana hidden in a mop bucket. She seized plastic baggies from the kitchen counter, a digital scale from inside a cabinet drawer, currency, rolling papers, and grinders. Officers also found a can of Barbicide powder, a mirror, clippers, trimmers, and cash[2] stored inside of a drawer in a box used to store a chess game. No cash register or business ledger were uncovered. Detective Eckert approached defendant and observed a handgun lying on a stack of jeans on the nightstand situated to the left side of the bed. The officers secured defendant and brought him to the living room. Detective Eckert notified Detective Finch about the handgun and she photographed and seized it.

A laboratory analysis indicated the marijuana weighed approximately forty-nine grams, or approximately one-and-one-half ounces. Jennifer claimed the gun was hers and that she used to keep it in a purse in the closet and never told defendant about it. She also contended the cash came from the daughter's bank account. Defendant asserted the marijuana was for his personal use.

---

[2] The cash totaled $3331 and was found in the following denominations: five one-hundred-dollar bills; fifteen fifty-dollar bills; ninety-six twenty-dollar bills; 106 one-dollar bills; three ten-dollar bills; and five five-dollar bills.

A-2282-18T4

On November 1, 2017, a Bergen County Grand Jury charged defendant under Indictment Number 17-11-01489 with third-degree possession of a controlled dangerous substance (CDS), marijuana, with intent to distribute, N.J.S.A. 2C:35-5(a)(1) (count one); second-degree possession of CDS, marijuana, with intent to distribute within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count two); second-degree possession of a firearm during a CDS crime, N.J.S.A. 2C:39-4.1(a) (count three); fourth-degree possession of hollow-nose bullets, N.J.S.A. 2C:39-3(f) (count four); fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3 (count five); third-degree financial facilitation of criminal activity (money laundering), N.J.S.A. 2C:21-25(a) (count six); and fourth-degree possession of a weapon by a previously convicted person, N.J.S.A. 2C:39-7(a) (count seven). Prior to trial, the State dismissed count four. The trial was bifurcated—counts one through six were tried first and count seven was tried separately before the same jury.

During the first trial, Sergeant Jason Hornstra of the Bergen County Prosecutor's Office Narcotics Task Force was qualified as an expert witness for the State. He testified, based on his experience, about the street value of marijuana and common packing techniques. Specifically, Sgt. Hornstra testified: (1) the street value of forty-nine grams of marijuana was approximately $500;

(2) the street value of one ounce of marijuana was typically between $200 to $400 depending on the level of THC in the vegetation; (3) marijuana was often sold in $20 bags packaged in small sandwich-size plastic bags; and, (4) it would be more economical for a marijuana user to purchase the drug in bulk.

Defendant and his wife, Jennifer, testified for the defense. Jennifer stated that she lived at the residence with her husband and seven-year-old daughter. She explained that her husband worked as a barber in their residence, and while defendant smoked approximately two to three joints a day, he did not sell or distribute marijuana. Jennifer also claimed ownership of the handgun and testified she obtained the gun from a family member after kicking her adult son out of the residence because she feared her son's volatile temper.

In addition, Jennifer testified that she kept the handgun a secret from defendant because she knew he did not want a gun in the house. According to her testimony, she typically kept the handgun hidden in a handbag on the top shelf of the closet, but, on the day of the search, she inadvertently left the handgun on the nightstand on top of her jeans because she was rushing to leave the house and forgot to place it back in the closet.

With respect to the currency found in the kitchen, Jennifer claimed responsibility for $3000 of the $3331 found in the chess box. She and defendant

5

stored money in the box because clients coming into the house were less likely to suspect it there. Jennifer testified the $3000 in cash was recently withdrawn from an account so that it could later be deposited in a bank account in her daughter's name. Her daughter's school deducted $1700 a month from this account for her tuition payments.

Defendant also testified on his own behalf. He admitted to possession of the marijuana seized by the officers but denied selling it. By his own admission, defendant testified he smokes between three to four joints per day and uses the grinders to crush the marijuana buds so he can roll the joints for himself. He explained he typically bought marijuana in bulk, smoked an ounce and a half every two weeks, and used the scale to weigh the marijuana he purchased.

Defendant reiterated that the money found in the chess box was for his daughter's bank account. He further testified that he was a heavy sleeper and did not hear the police enter his home and was unaware of the handgun on the nightstand until police escorted him into the living room.

Defendant stipulated to being previously convicted of a predicate offense that rendered him a person who could not lawfully possess a firearm. After the first phase of the trial, which lasted five days, the jury found defendant guilty of all counts except count six (money laundering). In the second phase of the trial,

the jury found defendant guilty on count seven, possession of a handgun by a person previously convicted of an offense listed in N.J.S.A. 2C:39-7(a).

On December 14, 2018, the trial court sentenced defendant to a five-year term of imprisonment on counts one and two,[3] a five-year term of imprisonment with forty-two months of parole ineligibility on count three, an eighteen-month term of imprisonment on count five, and an eighteen-month term of imprisonment on count seven,[4] for an aggregate of eleven-and-a-half years' imprisonment with forty-two months of parole ineligibility.

The court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3), the risk the defendant will commit another offense; six, N.J.S.A. 2C:44-1(a)(6), the extent of defendant's prior criminal history; and nine, N.J.S.A. 2C:44-1(a)(9), the strong need to deter defendant and others from violating the law. The court also found mitigating factors seven, N.J.S.A. 2C:44-1(b)(7), noting defendant led a law-abiding life for a substantial period of time before the commission of these crimes, and eleven, N.J.S.A. 2C:44-1(b)(11), the hardship defendant's

---

[3] Counts one and two merged for purposes of sentencing.

[4] The sentence for count five runs concurrent with the sentence imposed on counts one and two. The sentence for count three runs consecutive to the sentences imposed on counts one, two, and five. The sentence for count seven runs consecutive to the sentence imposed on count three.

family will face as a result of his incarceration. On balance, the trial court found the aggravating factors outweighed the mitigating factors. This appeal ensued.

II.

Defendant presents the following arguments for our consideration:

POINT I

THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL ON COUNTS [ONE] THROUGH [FIVE] AT THE CLOSE OF THE STATE'S CASE.

A. THE STATE FAILED TO PRESENT ANY EVIDENCE TO SUPPORT A FINDING OF EITHER ACTUAL OR CONSTRUCTIVE POSSESSION OF THE CONTRABAND BY RASHAUN [K.] HENRY.

B. IN THE ALTERNATIVE, THE STATE FAILED TO PRESENT ANY EVIDENCE TO SUPPORT A FINDING OF INTENT TO DISTRIBUTE MARIJUANA OR DRUG PARAPHERNALIA.

POINT II

DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY CONDUCT OF THE PROSECUTOR.

A. BY INTRODUCING EVIDENCE OF NON-TESTIFYING WITNESSES, THE PROSECUTOR DEPRIVED DEFENDANT OF HIS RIGHT TO CONFRONT THE WITNESSES AGAINST HIM.

B. REPEATED COMMENTS BY THE PROSECUTOR IN SUMMATION DENIED DEFENDANT A FAIR TRIAL.

POINT III

DEFENDANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO THE EFFECTIVE REPRESENTATION OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO RAISE AN AVAILABLE AFFIRMATIVE DEFENSE (Not Raised Below).

POINT IV

THE SENTENCING JUDGE ABUSED HIS DISCRETION BY IMPOSING A CONSECUTIVE RATHER THAN A CONCURRENT SENTENCE ON COUNT [SEVEN].

None of these arguments warrant reversal of defendant's convictions. When "'the sufficiency of the evidence on an acquittal motion'" is challenged on appeal, appellate courts evaluate the totality of the State's evidence under the de novo standard of review. State v. Jones, 242 N.J. 156, 168 (2020) (quoting State v. Williams, 218 N.J. 576, 593-94 (2014)). We must determine

> whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 459 (1967).]

See also Jones, 242 N.J. at 168 (citations omitted).

A court will enter a judgment of acquittal if at the close of the State's case, "the evidence is insufficient to warrant a conviction." R. 3:18-1. Generally, the veracity of each inference does not need to be established beyond a reasonable doubt; rather, "a jury may draw an inference from a fact whenever it is more probable than not that the inference is true." State v. Brown, 80 N.J. 587, 592 (1979). "Nevertheless, the State's right to the benefit of reasonable inference should not be used to shift or lighten the burden of proof, or become a bootstrap to reduce the State's burden of establishing the essential elements of the offense charged beyond a reasonable doubt." Ibid.

At the conclusion of the State's case-in-chief, defense counsel moved for a judgment of acquittal on the first five counts of the indictment. The trial court denied the motion. Defendant contends the court erred, and he is entitled to judgments of acquittal on all counts, even giving the State the benefit of all favorable inferences, which can reasonably be drawn from the evidence.

Here, the record shows the State satisfied its burden of proof. Actual possession of contraband requires "physical or manual control" over the object. Id. at 597. A defendant constructively possesses contraband, on the other hand, when "circumstances permit a reasonable inference that [the defendant] has knowledge of [the object's] presence, and intends and has the capacity to

exercise physical control or dominion over [the object] during a span of time." State v. Spivey, 179 N.J. 229, 236-37 (2004) (citing State v. Schmidt, 110 N.J. 258, 270 (1988)). A defendant's mere presence in the same place as contraband is not sufficient to establish constructive possession. See State v. Randolph, 228 N.J. 566, 592 (2017). Rather, a finding of constructive possession must rest on the "meticulous and objective analysis" of the specific facts and circumstances of the case. Brown, 80 N.J. at 594; see also State v. Whyte, 265 N.J. Super. 518, 523 (App. Div. 1992), aff'd o.b., 133 N.J. 481 (1993).

Defendant argues his presence in the home when the officers entered is not legally sufficient to support a finding of constructive possession. State v. El Moghrabi, 341 N.J. Super. 354, 364 (App. Div. 2001) ("While mere presence is insufficient, other circumstances tending to permit the inference may provide sufficient evidence of guilt."). Defendant also relies on State v. Jackson, 326 N.J. Super 276 (App. Div. 1999) to support his argument that the State failed to proffer any evidence "to support the conclusion that [defendant] was anything more than an overnight guest in the house at 106 Green Street."

These cases are distinguishable from the case under review. In the Jackson case, the defendant was charged with three crimes related to the possession of cocaine, which was seized from a closed dresser drawer and the

11

pockets of a pair of pants during a search of an apartment where defendant was found sleeping. Id. at 278-79. In response to an officer's instructions to get dressed, the defendant put on the pants from which the cocaine had previously been recovered. Ibid.

We found that while the evidence supported an inference that the defendant constructively possessed twenty vials of cocaine seized from the pants, "the State did not prove nor even contend that defendant resided at the subject apartment." Id. at 281. The State failed to show that any "indicia of identification was found on the premises and none of the vials containing cocaine were tested for fingerprints." Ibid. Because "there was nothing in the State's case from which a jury could readily draw the inference that the occupant of such premises would have knowledge and control of its contents," we concluded that the defendant was entitled to relief on his motion for judgment of acquittal with respect to the cocaine found in the dresser drawer. Ibid. (internal citation omitted).

In contrast, here defendant was the only one home when Detective Finch and the officers entered his residence. The loaded handgun was next to his bed; the drugs and cash were found down the hall. See State v. Palacio, 111 N.J. 543, 552-54 (1988). Unlike the factual scenario in Jackson, the officers here did not

find evidence negating an association between defendant and the home such as a utility bill addressed to another person.  Jackson, 326 N.J. Super. at 279. Officers entered the home at 12:30 p.m., the middle of the day.  Detective Finch testified that she recovered the contraband from "[defendant's] residence" and that Jennifer arrived at the home while officers were still there.  Detective Finch's testimony supports a reasonable juror's inference that defendant was an occupant of the premises and therefore, would have knowledge and control of its contents.

Moreover, even if Detective Finch's testimony was insufficient, the State provided additional circumstantial evidence beyond mere presence in the same location as contraband that would support a finding of constructive possession. Two jars of marijuana were recovered in the kitchen and surrounding area.  "An inference of knowledge and control of personalty found in rooms commonly lived in or used by an occupant is well-grounded in our everyday experience and is available to a jury as factfinder in a criminal case."  Brown, 80 N.J. at 596. Additionally, paraphernalia such as grinders and a digital scale were recovered from the kitchen, supporting an inference of control.  See State v. $36,560.00 in U.S. Currency, 289 N.J. Super 237, 261 (App. Div. 1996); State v. Meneses, 219 N.J. Super. 483, 486-87 (App. Div. 1987), supporting an inference of control.

We discern no legal basis to disagree with the trial court's ultimate conclusion to deny defendant's motion for acquittal.

We also reject defendant's argument that the State failed to present evidence to support a finding of intent to distribute marijuana or drug paraphernalia. Defendant claims that the State failed to carry its burden because it did not offer testimony that he either "was observed making or attempting to make a sale of marijuana or paraphernalia to anyone" or that any "conversations were overhead in which [defendant] arranged or planned such sales," and further, the amount of marijuana seized from defendant's home was not inconsistent with personal use.

Although Sergeant Hornstra testified it can be more economical for a marijuana user to buy in bulk, he also stated that purchases of marijuana of all quantities are common. And, Sergeant Hornstra opined that marijuana is frequently sold in twenty-dollar bags containing two grams of marijuana.[5] In

---

[5] In a N.J.R.E. 104 hearing conducted to determine the admissibility of the State's expert witness under N.J.R.E. 702, the trial judge expressly considered the limitations imposed by the Supreme Court in State v. Cain, 224 N.J. 410, 426-27 (2016). Defendant did not challenge the expert witness' testimony in this respect.

tandem with the digital scale, grinders, and plastic bags found in defendant's kitchen, the jury was able to draw inferences from this evidence and determine whether it is more probable than not that the inference is true. Thus, there is no indication that the trial court abused its discretion in denying defendant's motion for acquittal.

## III.

In the alternative, defendant contends that his right to a fair trial was violated by the assistant prosecutor at two points during the trial. First, defendant claims the assistant prosecutor introduced evidence from a non-testifying witness, thereby violating his right to confront witnesses against him. Second, defendant asserts the assistant prosecutor made inappropriate comments during summation, which could not be overcome by the trial court's curative instructions.

With respect to the alleged confrontation clause violation, defendant takes issue with the following exchange between the assistant prosecutor and Detective Finch on her direct examination:

> Q: Detective Finch, in May of 2017, were you assigned to the [N]arcotics [T]ask [F]orce?
>
> A: Yes, I was.

Q. Were you conducting an investigation during that month?

A. Yes.

Q. Who was the target of that investigation?

A. Rashaun Henry.

Defense counsel immediately objected and moved for a mistrial. The assistant prosecutor explained to the trial court at sidebar she was eliciting the testimony to explain that Detective Finch had conducted a "lawful entry and search of the premises." Prior to trial, the parties agreed to use this language "to shield the jury from the fact that a judge had signed a search warrant." The trial court noted this agreement when it stated:

> It is perfectly permissible for the State in eliciting its testimony to have a witness refer to the fact that there was a search warrant executed to effect a search. In this particular case, with consent of defense, I . . . will permit the State to elicit testimony that there was a lawful entry and search in order to address the same concern so that the jury doesn't think that there was some illegality in the search of the premises . . . . [T]he fact that law enforcement conducted a lawful search or executed a search warrant in the search of the premises, it's only common sense, to think, well, why? You know, why are they doing that? To the extent that we can limit that, that's why I was going to permit the State to lead the witness to the point that there was a lawful entry into the premises.

16

The trial court sustained defense counsel's objection but denied the motion for mistrial, instead offering a curative instruction to the jury. On appeal, defendant reiterates the argument that Detective Finch's testimony on this point "was highly prejudicial and could not be cured by the instruction given by the trial judge."

It is well settled that the hearsay rule is not violated when police officers explain the reason they approached a suspect or went to the scene of a crime by stating that they do so due to information received. State v. Bankston, 63 N.J. 264, 268 (1973). Such testimony is admissible to show that an officer was not acting in an arbitrary manner or to explain an officer's subsequent conduct. Ibid. However, when officers become more specific by repeating what some person told them concerning a crime by an accused, such testimony violates the hearsay rule. Id. at 268-69. "Moreover, the admission of such testimony violates the accused's Sixth Amendment right to be confronted by witnesses against him." Id. at 269; see also Crawford v. Washington, 541 U.S. 36, 59 (2004).

Bankston and its progeny establish that police officers may not imply that they possess superior knowledge, outside the record, that incriminates the defendant. State v. Branch, 182 N.J. 338, 351 (2005). "The question is whether there is a reasonable possibility that the evidence complained of might have

contributed to the conviction." Bankston, 63 N.J. at 273 (citation and internal quotation marks omitted).

In Bankston, a detective testifying against a defendant accused of unlawful possession of heroin testified at trial that he went to a tavern to look for an individual possessing narcotics on the basis of an informant's tip. Bankston, 63 N.J. at 266. During the course of his testimony, the detective referred to the defendant as "the person we were looking for, the description of the person we were looking for." Id. at 267. Our Supreme Court reasoned that testimony explaining the reason why an officer approached a suspect or went to the scene of a crime can be admissible "to show that the officer was not acting in an arbitrary manner or to explain his subsequent conduct," id. at 268, but, where there is no allegation that the police were acting arbitrarily, and as a result, there is no need for reference to an informer, such testimony may have prejudicial effect. Id. at 272-73. Therefore, if an officer states or suggests that some other person provided information linking the accused to the crime, then the officer has violated the hearsay rule. Id. at 268-69.

Here, similar to Bankston, defense counsel timely objected to the hearsay statement. However, unlike Bankston where a curative instruction was limited to the prosecutor's remarks about the detective's testimony during summation,

the trial court in the matter under review instructed the jury to disregard the testimony as soon as the jury was recalled:

> Ladies and gentlemen, I am sustaining the objection to the last question. You are to disregard the question from the State to this witness regarding who may have been the target of their investigation. It's not to enter into your deliberations whatsoever. You are not to speculate at all as to why an investigation was initiated by this witness.
>
> And I want to remind all of the jurors that comments and information placed in the questions by the attorneys on either direct or cross-examination is not evidence. The evidence that you are to consider is only the evidence that you hear from this witness stand and any items or exhibits that are admitted into evidence.

Defendant asserts that this curative instruction was insufficient. We disagree. Moreover, we conclude that the trial court's decision to deny defendant's motion for a mistrial was inconsequential. In determining the prejudicial effect of the judge's ruling, "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." State v. Macon, 57 N.J. 325, 335-36 (1971). "The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." Bankston, 63 N.J. at 273.

Here, the record lacks any evidence to suggest that the jury improperly gave decisive weight to the use of the word "target." The trial court highlighted the fact that the jury would have inferred defendant was the target of an investigation even if the assistant prosecutor had initiated her questioning in the manner previously agreed upon:

> As I said this jury . . . is going to wonder why there was an entry into the premises for the purposes of the search. Okay? And I've addressed that, how we're going to accomplish that. I do not believe that the prejudice resulting from this comment - - this term used in the question is of a nature which cannot be cured by a curative instruction to the jury to disregard. Okay? So we're going to continue.

When defense counsel persisted, the court concluded:

> I think my other consideration is the [f]act that had [the assistant prosecutor] proceeded in the manner in which we discussed initially, that it would have been quite evident and the jury would be able to easily infer that the target of their investigation, once they saw [defendant] within the premises in the bedroom near the weapon and the drugs that he became the target of the investigation . . . . But for not initiating or beginning the questioning in the manner in which we discussed, it's going to be quite evident to this jury who the target of the investigation is once [the assistant prosecutor] proceeds in the manner in which we have discussed.

Given the substantial credible evidence against defendant, including testimony from lay and expert witnesses, as well as physical evidence, we do

not consider Detective Finch's testimony, tempered by a curative instruction, to be clearly capable of producing an unjust result.  See Macon, 57 N.J. at 336.

Defendant also contends the prosecutor made repeated comments during summation that deprived him of a fair trial.  At two points, the prosecutor mentioned the danger of having a seven-year-old child within the reach of a firearm:

> You heard he has a seven-year-old child.  Why would he keep so much marijuana in the house where the kid could get into it? . . . He's going to keep it on hand where somebody can steal it.  The kids will get into it.  That doesn't make sense.
>
> It's not her secret gun that [defendant] never knew about.  That doesn't make any sense.  And she wants you to believe she takes this gun out.  She wants you to believe that she's this bungling wife.  Notice also in her testimony she was very careful not to confess to child endangerment.  She was very careful to say, I put the gun down, and then took the seven-year-old out of the house immediately.  Very careful not to confess child endangerment.

Defendant also maintains that the assistant prosecutor's comments in summation about he and Jennifer possessing the handgun without a permit, comments about defendant sharing marijuana with his barbershop clients, insinuating he and Jennifer were guilty of child endangerment because the police found the

handgun on the nightstand, and attempting to shift the burden of proof, deprived him a fair trial.

We review de novo claims of prosecutorial misconduct during summation. State v. Smith, 212 N.J. 365, 387 (2012). Prosecutors in criminal cases "are expected to make vigorous and forceful closing arguments to juries." State v. Frost, 158 N.J. 76, 82 (1999) (citation omitted). They are "afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Ibid. (citations omitted). They may comment on the facts or what may be reasonably inferred from the evidence. State v. Wakefield, 190 N.J. 397, 457 (2007). "However, 'the primary duty of a prosecutor is not to obtain convictions, but to see that justice is done.'" State v. Smith, 167 N.J. 158, 177 (2001) (quoting Frost, 158 N.J. at 83).

When making a closing argument to a jury, a prosecutor may not "make inaccurate legal or factual assertions," Frost, 158 N.J. at 85, or "cast unjustified aspersions on the defense or defense counsel," Smith 167 N.J. at 177. Prosecutors may not make "inflammatory and highly emotional" appeals that divert a jury from a fair consideration of the evidence. State v. Marshall, 123 N.J. 1, 161 (1991). They further cannot "express a personal belief or opinion as

to the truthfulness of his or her own witness's testimony." State v. Staples, 263 N.J. Super. 602, 605 (App. Div. 1993).

Where prosecutorial misconduct has occurred, courts should not reverse unless the conduct was "so egregious that it deprived the defendant of a fair trial." Wakefield, 190 N.J. at 438 (quoting Smith, 167 N.J. at 181). The prosecutor's conduct must "substantially prejudice the defendant's fundamental right to have a jury fairly evaluate the merits of his [or her] defense" in order to warrant reversal. State v. Roach, 146 N.J. 208, 219 (1996) (citation omitted).

In determining whether prosecutorial misconduct warrants reversal, courts should consider "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Smith, 167 N.J. at 182 (citing State v. Timmendequas, 161 N.J. 515, 575 (1999)). Even if the evidence of guilt is overwhelming, it cannot be a basis for depriving a defendant of his or her right to a fair trial. Frost, 158 N.J. at 87.

However, "[o]ur task is to consider the 'fair import' of the State's summation in its entirety." State v. Jackson, 211 N.J. 394, 409 (2012) (quoting Wakefield, 190 N.J. at 457). An isolated improper comment may be

insufficiently prejudicial to warrant reversal, especially where the trial judge instructed the jury that counsel's statements are not evidence.  State v. Setzer, 268 N.J. Super. 553, 566 (App. Div. 1993).  We may also consider whether statements in the defense counsel's summation prompted the prosecutor's comments.  Smith, 212 N.J. at 403-04.

We conclude defendant's arguments lack merit.  The trial court issued a curative instruction with respect to the child endangerment comments and sustained defense counsel's objection to the assistant prosecutor's statement about producing the jeans found on the nightstand.  Moreover, the trial court instructed the jury that the burden of proof rests solely with the State.  Two more curative instructions were issued by the trial court when the assistant prosecutor commented on defendant's lack of a gun permit and inference that he could have been sharing his marijuana with his barbershop clients.

Despite several curative instructions required during the assistant prosecutor's summation, we conclude, in the context of the entire summation, that defendant was not deprived of a fair trial.  Our Supreme Court has stated there is a presumption the jury follows instructions.  State v. Loftin, 146 N.J. 295, 390 (1996).  Further the standard for prosecutorial misconduct is quite high. "[P]rosecutorial misconduct is not grounds for reversal of a criminal conviction

A-2282-18T4

unless the conduct was so egregious as to deprive defendant of a fair trial." Timmendequas, 161 N.J. at 575.

Conduct is egregious when it is "clearly and unmistakably improper" and substantially interferes with a jury's ability to fairly evaluate the merits of the defense. Ibid. We find the trial court's curative instructions were sufficient to overcome any prejudice to defendant. The instructions were given immediately and addressed the problematic statements at issue. See State v. Vallejo, 198 N.J. 122, 134-35 (2009).

IV.

Next, defendant argues that his trial counsel's failure to raise an affirmative defense under N.J.S.A. 2C:35-7.1 deprived him of his federal and state constitutional rights to the effective representation of counsel. Our Supreme Court has consistently expressed "a general policy against entertaining ineffective-assistance of counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Castagna, 187 N.J. 293, 313 (2006), (quoting State v. Preciose, 129 N.J. 451, 460 (1992)). We thus decline to address this issue here and leave defendant to raise this issue in a post-conviction relief petition. See R. 3:22-1 to -13.

V.

Lastly, defendant maintains that the trial court erred by imposing consecutive rather than concurrent sentences. Specifically, defendant asserts that the eighteen-month sentence on count seven should have been imposed concurrently for an aggregate sentence of ten years with a forty-two-month period of parole ineligibility. This argument is "without sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(2). However, we add the following remarks.

We give deference to sentencing decisions by the trial courts. State v. Bieniek, 200 N.J. 601, 612 (2010). A sentencing court should review a range of information "to assess the defendant's history and characteristics, and to understand the nature and circumstances of his or her crime." State v. Fuentes, 217 N.J. 57, 72 (2014). When sentencing for a CDS offense, the trial judge must explicitly determine and weigh aggravating and mitigating factors. State v. Sainz, 107 N.J. 283, 291 (1987). These factors must be supported by "competent and reasonably credible evidence," State v. Roth, 95 N.J. 334, 363 (1984), and must be "qualitatively assessed and assigned appropriate weight in a case-specific balancing process." Fuentes, 217 N.J. at 72-73 (citing State v. Kruse, 105 N.J. 354, 363 (1987)). When imposing a sentence, the trial court must "state

26

reasons for imposing such a sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting the sentence." R. 3:21-4(g).  Such a statement of reasons demonstrates "that all arguments have been evaluated fairly."  Bieniek, 200 N.J. at 609.

Additionally, a court imposing a sentence for multiple offenses must bear in mind that "'though a defendant's conduct may have constituted multiple offenses, the sentencing phase concerns the disposition of a single, not a multiple, human being.'"  State v. Yarbough, 100 N.J. 627, 646 (1985) (quoting State v. Cloutier, 286 Or. 579, 591 (1979)).  Therefore, when crafting a consecutive sentence, the sentencing court should make "an overall evaluation of the punishment for the several offenses involved."  Yarbough, 100 N.J. at 646 (citing State v. Rodriguez, 97 N.J. 263, 274 (1984)).

To do so, a court examines criteria such as whether: (1) "the crimes and their objectives were predominantly independent of each other;" (2) "whether the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;" (3) "any of the crimes involved multiple victims;" and, (4) "the convictions for which the sentences are to be imposed are numerous."  Yarbough, 100 N.J. at 644.  Because a trial court's imposition of a consecutive

or concurrent sentence is discretionary, an appellate court reviews such a decision for abuse of discretion. Spivey, 179 N.J. at 245.

Here, the sentencing judge carefully considered the sentence he imposed. After highlighting and clearly being moved by the handwritten statement submitted by defendant's daughter, the court made specific findings with respect to the aggravating and mitigating factors:

> As to aggravating and mitigating factors, I do find [a]ggravating [f]actor [three], the risk that you will commit another offense given your lengthy history of substance abuse. The fact that certainly there's a profit motive here for you.
>
> Aggravating [f]actor [six], the extent of your prior criminal history. You do have multiple prior felony convictions, although some of them are somewhat remote.
>
> Aggravating [f]actor [nine], the strong need to deter you and others from violating the law. Particularly with respect to the firearm in this case.
>
> I am going to give minimal weight to [m]itigating [f]actor [seven]. There haven't been any real issues. There's no convictions for the past -- it would appear it was about [sixteen] years since the previous conviction. I'm going to give minimal weight though to [m]itigating [f]actor [seven] that you've led a law-abiding life for a substantial period of time prior to the commission of these crimes.
>
> I'm certainly going to give great weight . . . to [m]itigating [f]actor [eleven] in this case. Because your

A-2282-18T4

incarceration will certainly entail an excessive hardship to yourself and your dependents, particularly your wife. And most particularly your daughter. Your young daughter.

The sentencing court found the aggravating factors outweighed the mitigating factors.

We conclude the sentencing court's findings on the aggravating factors were "'based upon competent credible evidence in the record.'" Bieniek, 200 N.J. at 608 (quoting Roth, 95 N.J. at 364). There is no reason to second-guess the sentencing court's application of the sentencing factors, and no reason to conclude that the sentence "shocks the judicial conscience." Roth 95 N.J. at 364; see also Bieniek 200 N.J. at 612.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2282-18T4